### In re Adele Stacey

[411 A.2d 1359]

No. 37-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 5, 1980

*William G. Martin,* Vermont Legal Aid, Inc., Montpelier, for Petitioner.

*Michael R. Zimmerman,* Montpelier, for amicus curiae V.S.E.A.

*M. Jerome Diamond,* Attorney General, and *Louis P. Peck,* Chief Assistant Attorney General, Montpelier, for Respondent.

Larrow, J. This is an appeal by the State from a decision of the Vermont Labor Relations Board (hereinafter Board) which found that grievant, Adele Stacey, had been wrongfully terminated by her employing unit, the Vermont Comprehensive Employment and Training Office (hereinafter CETO). Questions for review were certified to this Court under V.R.A.P. 13(d), and a cross-appeal was taken by Adele Stacey as to the issue of back pay. The parties stipulated under V.R.A.P. 28(f) that the State would be considered the appellant in this case.

Adele Stacey had been employed as a clerk by CETO for about five years before her termination. On August 29, 1978, she became ill with phlebitis and informed her supervisor that she could not return to work. At that time, grievant had exhausted all her annual and sick leave and, in order to retain her employee status, had to request and be granted an administrative leave of absence pursuant to Article XXX of the "Agreement Between The State of Vermont and the Vermont State Employees Association" (hereinafter Contract).

Although there was some dispute as to whether Adele Stacey took the proper steps to request an administrative leave, she was not granted the leave and informed, by letter dated September 12, 1978, that unless she returned to work by September 18, 1978, she would be administratively terminated. On advice from her doctor, Stacey did not return to work by that date and was terminated.

As a result of this termination, Adele Stacey brought a grievance to the Board. The State filed a motion to dismiss

which was denied, and after hearing the Board reinstated the grievant. The State appeals from this decision, and numerous certified questions are before us. It would serve no useful purpose to recite them as all but three are rendered nugatory by our disposition of the instant case.

The first certified question is whether "the Vermont Labor Relations Board [had] jurisdiction of this matter?" This question is answered in the affirmative.

Under 3 V.S.A. § 926, the Board is empowered to take jurisdiction of employee grievances. The extent of its jurisdiction in grievance proceedings is limited by the definition of the term "grievance" in 3 V.S.A. § 902(14). *In re Gage,* 137 Vt. 16, 18, 398 A.2d 297, 298 (1979); *In re Brooks,* 135 Vt. 563, 570, 382 A.2d 204, 208–09 (1977). The portion of 3 V.S.A. § 902(14) relevant to this appeal is:

> "Grievance" means an employee's . . . expressed dissatisfaction, presented in writing, with aspects of employment . . . under collective bargaining agreement . . . which has not been resolved to a satisfactory result through informal discussion with immediate supervisors.

In the instant case, we view 3 V.S.A. § 902(14) as requiring the employee's expressed dissatisfaction be with an *aspect of employment* under the collective bargaining agreement.

The State contends that Adele Stacey's termination was not an "aspect of employment," protected by the contract, but was comparable to an appointed or exempt employee who is subject to removal at the pleasure of the appointing authority, without cause or hearing. See *Emerson* v. *Hughes,* 117 Vt. 270, 282, 90 A.2d 910, 917 (1952). We do not adopt this position, but find that Stacey's termination was indeed an *aspect of employment.* Her involuntary separation from CETO, however labelled, is an "aspect" of grievant's employment and, therefore, within the meaning of "grievance." 3 V.S.A. § 902(14). See *In re Brooks, supra,* 135 Vt. at 566, 382 A.2d at 206.

The next certified question we address is "[d]id the State have the absolute right to remove grievant from her employment or to grant or deny her an administrative leave of ab-

sence as it saw fit if she had exhausted all of her accumulated annual or sick leave and was unable to work at that time?" This question is answered in the affirmative.

This answer devolves from a careful review of the Contract. Article XXX is conceded by the parties to be the part of the Contract relevant to this appeal. Furthermore, section 2.a. of Article XXX is recognized by the parties to be of primary significance. It reads:

> A leave of absence may be granted to a permanent status or limited status employee who can be expected to return to work provided that, in the opinion of the Commissioner of Personnel upon advice of the appointing authority, the leave of absence is in the best overall interests of the employee and clearly not detrimental to the State of Vermont. (Emphasis added.)

The Board viewed section 2.a. as vesting the discretion, to approve or deny administrative leave requests, with the Commissioner of Personnel. In essence, the Board found that the appointing authority's duties are ministerial. It merely decides whether the requisite criteria are met; in this case that all sick and annual leave is exhausted and the employee's eventual return to work is anticipated. This recommendation is then, according to the Board, ultimately reviewed and affirmed or disaffirmed by the Commissioner of Personnel.

■■ We disagree and hold that section 2.a. gives the appointing authority, CETO, the absolute power to *deny* an administrative leave without further agency review. The word "may," underscored above, is permissive, not mandatory language, which the Board acknowledges. A contract will be interpreted by the common meaning of its words where the language is clear. *Lamoille Grain Co.* v. *St. Johnsbury & Lamoille County R.R.*, 135 Vt. 5, 8, 369 A.2d 1389, 1390 (1976). Moreover, the Court will not read terms into a contract, unless they arise by necessary implication. *Martin* v. *Shepard*, 134 Vt. 491, 495, 365 A.2d 971, 975 (1976). Unlike section 2.a. of Article XXIX, where "shall" is used, and the granting of *military* leave is clearly mandatory, the use of "may" here gives CETO the absolute discretion to deny administrative leave requests.

■ This interpretation of section 2.a. is buttressed by examining other sections of Article XXX. In construing a contract, the contract provisions must be viewed in their entirety and read together. *Cross-Abbott Co.* v. *Howard's, Inc.,* 124 Vt. 439, 441, 207 A.2d 134, 137 (1965); *In re Pirie Estate,* 116 Vt. 159, 165, 71 A.2d 245, 248 (1950).

■ Section 3 of Article XXX, for example, outlines the responsibilities of the various parties involved with administrative leaves. Under this section, the Department of Personnel's duties are to "[a]pprove or disapprove the *recommended* leave." (Emphasis added.) This language makes it evident that the Department's powers of approval or disapproval only operate when the employing agency, in the instant case, CETO, *recommends* administrative leave. When administrative leave is not recommended, the Department of Personnel has no review function.

Moreover, section 2.b.vi., which allows administrative leaves for other "justifiable reasons," requires the "*concurrence* of the appointing authority and the Commissioner of Personnel." (Emphasis added.) Where the appointing authority denies the administrative leave request, the Commissioner of Personnel does not become involved, as there can be no concurrence; the denial is not reviewed.

In support of her position, grievant places great weight on section 4.c. which reads: "The supervisor shall consider the request and, if it is permitted under the provisions of this article, shall authorize the leave." Adele Stacey argues, and the Board found, that this language, specifically the word "shall," makes the employing agency's responsibilities, as alluded to earlier, ministerial; merely rubber-stamping the administrative leave request if the requisite criteria are present.

Standing alone, section 4.c. might be susceptible to grievant's interpretation, but in the overall context of this contract, there is no serious question that it operates only *after* the supervisor acts favorably upon the leave request. In construing written contracts to ascertain the parties' intent, Vermont courts seek to give effect to all material parts of the contract and to form a harmonious result. *New England Tel. & Tel. Co.* v. *Central Vermont Public Service Corp.,* 391

F. Supp. 420, 430 (D. Vt. 1975); *Cross-Abbott Co.* v. *How-ard's, Inc., supra,* 124 Vt. at 441, 207 A.2d at 137.

Grievant's view of section 4.c. is incongruous with Article XXX's other provisions and would create an anomalous situation. In the instant case, for example, grievant's "supervisor," a stenographer, would have the unilateral power, under grievant's interpretation of section 4.c., to authorize an administrative leave subject only to a mere fact finding review by the Commissioner of Personnel.

This view is untenable. Section 4. merely sets out the procedure for implementing section 2. and only operates *after* the appointing authority, pursuant to section 2., approves the request for administrative leave. Using this interpretation, section 4.c. logically fits into the Article XXX scheme, and is construed to read: "The supervisor shall consider the request and, if it is permitted [by the head of the employing agency] under the provisions of this article shall authorize the leave." If the head of the employing agency denies the administrative leave request, section 4. never operates. This same construction is found in Article XXVII (educational leave) of the Contract.

The third and final certified question we address is "[d]id the Board err in finding that [the] State had improperly denied Grievant an administrative leave of absence, and had improperly terminated her employment?" This question is answered in the affirmative for the reasons stated, *supra,* in our answer to the second certified question.

*Certified questions 1, 2, and 6 are answered in the affirmative. The Board's order of January 25, 1979, is reversed.*