## Doreen E. Sanders v. St. Paul Mercury Insurance Co.

[536 A.2d 914]

No. 85-544

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed October 9, 1987

*Manfred W. Ehrich, Jr.*, Bennington, and *Joy C. Frank*, Dorset, for Plaintiff-Appellant.

*Allen R. Keyes* and *Mark H. Kolter* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Allen, C.J.** Plaintiff seeks interlocutory review under V.R.A.P. 5 of a partial summary judgment declaring that defendant-insurer's liability to her under its uninsured motorist (UM) coverage was limited to the stated policy limit of $25,000. We affirm.

While driving an automobile insured by defendant, plaintiff was injured in an accident caused by an uninsured motorist. Plaintiff was living at home at the time and was a "covered person," entitled to recover damages under Part C of the policy relating to UM coverage. The policy issued to plaintiff's father covered four automobiles, and a separate premium was assessed for each vehicle for uninsured motorist coverage. The plaintiff argued below that the payment of four premiums allowed her to claim four times the stated policy maximum for UM accidents, notwithstanding the "Limit of Liability" provision of the policy which states:

LIMIT OF LIABILITY   The limit of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained

by any one person in any one accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay regardless of the number of:

1. Covered persons;
2. Claims made;
3. Vehicles shown in the Declarations; or
4. Vehicles involved in the accident.

The trial court disagreed with plaintiff and granted defendant partial summary judgment, concluding that "the limit of liability clause in the . . . policy is clear and unambiguous and should be enforced according to its terms." The court entered an order of report by agreement pursuant to V.R.A.P. 5(a) on the following question of law:

Did the Superior Court err in its Order dated November 18, 1985, declaring that the limits of the Defendant's liability to the Plaintiff was $25,000 under the terms of the uninsured motorist policy issued by the Defendant to the Plaintiff in this case and under the law of the State of Vermont?

In answering this question we are asked to determine an issue of first impression in Vermont: whether plaintiff should be permitted to aggregate or "stack" the uninsured motorist coverage provided for each of the four automobiles insured by defendant under a single policy.

An automobile insurance policy that does not offer UM coverage cannot be issued in Vermont on an automobile "registered or principally garaged in this state." 23 V.S.A. § 941(a). This statute protects insured motorists from uninsured, financially irresponsible drivers. Recovery is not limited to situations involving the motor vehicle of the insured. Though no cases have reached this Court on the question, the language of § 941 extends coverage to insured persons wherever they may be, provided that they are injured by an uninsured motorist, and that is the interpretation of similar statutes elsewhere. *Lundy* v. *Aetna Casualty & Surety Co.*, 92 N.J. 550, 553, 458 A.2d 106, 108 (1983); *Constant* v. *Amica*

*Mutual Insurance Co.*, 497 A.2d 343, 346 (R.I. 1985) (Bevilacqua, C.J., dissenting). No policy can be issued which reduces the amount of coverage mandated by statute. See *Muir* v. *Hartford Accident & Indemnity Co.*, 147 Vt. 590, 593, 522 A.2d 236, 238 (1987). The question before this Court is whether the trial judge's validation of a clause barring intra-policy stacking effectively reduced the amount of mandated coverage.

Decisions in other jurisdictions based on generally similar statutes have been sharply divided on the issue of stacking in each of three major classes of cases that treat the issue: (1) cases involving the stacking of coverages in policies issued by different insurers to the same insured, e.g., *St. Paul Fire & Marine Insurance Co.* v. *Goza*, 137 Ga. App. 581, 224 S.E.2d 429 (1976); (2) cases involving the stacking of coverages in multiple policies issued by the same insurer to the same insured, e.g., *Sayers* v. *Safeco Insurance Co. of America*, 628 P.2d 659 (Mont. 1981); and (3) cases like the one at bar, involving the stacking of coverages provided in a single policy covering different vehicles of the same insured, e.g., *Arminski* v. *United States Fidelity & Guaranty Co.*, 23 Mich. App. 352, 178 N.W.2d 497 (1970). See Comment, *Stacking of Uninsured Motorist Coverage*, 49 Mo. L. Rev. 571 (1984); Comment, *Intra-Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be or Not to Be*, 22 S.D.L. Rev. 349 (1977).

The majority of modern cases in the first two classes allow stacking. See Annotation, 23 A.L.R.4th 12 (1983); Annotation, 25 A.L.R.4th 6 (1983). Some of these decisions have cited a policy's ambiguity. *Employers Liability Assurance Corp.* v. *Jackson*, 289 Ala. 673, 270 So. 2d 806 (1972); *Goodman* v. *Continental Casualty Co.*, 347 A.2d 662 (Del. Super. Ct. 1975); *Squire* v. *Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 370 N.E.2d 1044 (1977); *Lipscombe* v. *Security Insurance Co.*, 213 Va. 81, 189 S.E.2d 320 (1972). Some have stressed adherence to state insurance statutes, *Lundy*, 92 N.J. at 560, 458 A.2d at 111; *Tucker* v. *Government Employees Insurance Co.*, 288 So. 2d 238, 242-43 (Fla. 1973), and still others are based on the court's conclusion that it is unfair to allow an insurer to retain additional premiums while not providing additional coverage for the extra premiums. *Taft* v. *Cerwonka*, 433 A.2d 215, 219 (R.I. 1981).

Plaintiff advances all of the foregoing theories of recovery, arguing that Part C of the policy is ambiguous and that the ambi-

guity should be resolved in favor of the insured; that reading the policy language to prevent stacking would be inconsistent with 23 V.S.A. § 941 and would violate public policy; and that enforcement of the anti-stacking clause would be unconscionable, first because the payment of multiple premiums without affording coverage beyond that acquired under the first premium constitutes windfall for the defendant, and second, because a policyholder paying multiple premiums has a reasonable expectation of receiving multiple benefits.

## I. Ambiguity

■ Insurance contracts must be interpreted according to their terms and the evident intent of the parties, as gathered from the contract language. *Town of Troy* v. *American Fidelity Co.*, 120 Vt. 410, 417, 143 A.2d 469, 474 (1958). Ambiguity in policy language should be resolved in favor of the insured since the insurer is in a far better position to avoid latent ambiguity in the text of a policy. *Id.*; see *Muir* v. *Hartford Accident & Indemnity Co.*, 147 Vt. 590, 522 A.2d 236. Where "limits of liability" language is ambiguous, it will be construed against the insurer. *Goodman* v. *Continental Casualty Co.*, 347 A.2d at 665; *Squire* v. *Economy Fire & Casualty Co.*, 69 Ill. 2d at 179, 370 N.E.2d at 1049; *Sturdy* v. *Allied Mutual Insurance Co.*, 203 Kan. 783, 792, 457 P.2d 34, 41 (1969); *Hartford Accident & Indemnity Co.* v. *Bridges*, 350 So. 2d 1379, 1381-82 (Miss. 1977).

The argument for ambiguity in the present policy is weak. Against the plain meaning of the language in Part C of the policy plaintiff raises but a single point, namely that the language of Part C differs from the language of Part A, relating to liability coverage, and Part B, dealing with medical payments coverage. Parts A and B have identical subparagraphs:

> This is the most we will pay regardless of the number of
> . . . .
> 3. Vehicles or premiums shown in the Declarations . . . .

Part C in contrast omits the reference to premiums and states:

> This is the most we will pay regardless of the number of
> . . . .
> 3. Vehicles shown in the Declarations . . . .

■ Plaintiff argues that the omission of the word "premiums" in Part C is purposeful and reflects an intention to permit stacking where multiple premiums are in fact paid, relying on the general rule of contract construction that "contract provisions must be viewed in their entirety and read together." *In re Stacy*, 138 Vt. 68, 72, 411 A.2d 1359, 1361 (1980) (citations omitted). But a reading of the entire agreement does not detract from the meaning of Part C, which is clear on its face. As this Court also said in *In re Stacy*, 138 Vt. at 71, 411 A.2d at 1361, "[a] contract will be interpreted by the common meaning of its words where the language is clear. Moreover, the Court will not read terms into a contract, unless they arise by necessary implication." (citations omitted). In the present case the argument for ambiguity is the variance between two parallel provisions of the policy, each dealing with limits of liability. We would apply the variance in language to plaintiff's benefit if she had provided the predicate for doing so by pointing out some reason why Part C could not be interpreted definitively without reference to some other contract provision. Plaintiff has not provided such a reason, and we do not perceive one.

## II. Consistency with 23 V.S.A. § 941

Plaintiff contends that 23 V.S.A. § 941 bars enforcement of the clause in the policy limiting the insurer's liability under a single policy to a fixed amount for "each person" irrespective of the number of vehicles insured or premiums paid. Plaintiff's rationale is based on an extension and application of the underlying theory in multiple policy cases. That theory is exemplified in *Goodrich* v. *Lumbermens Mutual Casualty Co.*, 423 F. Supp. 838, 842 (D. Vt. 1976), where the court held that an "excess-escape" or "other insurance" clause in a liability policy was inconsistent with Vermont's statute, which requires that " 'no policy' may be issued in this state without making provision for uninsured motorist coverage." If a clause in one policy effectively vitiates the UM coverage provided in another policy, the latter becomes, in effect, a policy without protection against uninsured motorists—in violation of 23 V.S.A. § 941(a). As one commentator has explained it:

The form of uninsured motorist statutes in effect, with some variations from state to state, commonly prohibits the issuance of a policy of automobile liability insurance "with re-

spect to any motor vehicle" unless it provides uninsured motorist coverage with limits equal to minimum financial responsibility limits "for the protection of persons insured thereunder."

Schermer, Automobile Liability Insurance § 31.02(9)(b), at 31-23 (1985). But the policy before this Court does provide full statutory UM coverage "with respect to any motor vehicle" included within the policy at bar. It does not provide separate and additional UM benefits with respect to each *premium* paid, but § 941 does not require that. Irrespective of the number of vehicles covered in the single policy, UM coverage is provided "with respect to any motor vehicle" within it. As the Rhode Island Supreme Court stated in *Constant* v. *Amica Mutual Insurance Co.*, 497 A.2d at 345-46, dealing with a policy provision and a statute nearly identical to those at bar:

> The provisions of [the Rhode Island UM statute] . . . provided for minimum coverage of $25,000 because of bodily injury to one person and a minimum of $50,000 because of bodily injury to two or more persons in any one accident. No one disputes that the limits set forth in the uninsured-motorist provisions of [this] policy met the requirements of this section. Consequently, the limitation of liability contained in [this] policy restricting the maximum limit to $50,000 does not violate the uninsured-motorist statutory provision.

The court in *Charley* v. *Farmers Mutual Insurance Co.*, 219 Neb. 765, 769-70, 366 N.W.2d 417, 421 (1985), sounded a similar theme:

> [The Nebraska UM statute] neither requires nor prohibits the aggregation of multiple uninsured motorist coverages. The statute requires only that an insurer offer uninsured motorist coverage on any automobile it insures for bodily injury liability. There is no language which requires that multiple uninsured motorist coverages, once provided, be aggregated no matter what the policy says with respect to the matter. Neither is there language which prohibits the aggregation of the uninsured motorist coverages provided. *Once it is determined the statute neither requires nor prohibits the aggregation of multiple uninsured motorist coverages, the*

*problem becomes one of determining what the contract of insurance in question provides.*

(emphasis added).

While inter-policy anti-stacking provisions can be said to violate the terms of statutes like Vermont's, e.g., *Beek* v. *Ohio Casualty Insurance Co.*, 135 N.J. Super. 1, 4, 342 A.2d 547, 549 (1975), *aff'd*, 73 N.J. 185, 373 A.2d 654 (1977), a single policy complies literally with the mandate of § 941 the first time it provides the statutory UM coverage. And logic supports the argument that a literal reading of the statute is the correct one. The issuance of several policies to the same insured can arguably be said to imply several separate, independent bargains, each enforceable without regard to the other. But it is not unfair to expect a policyholder to read all of a single policy's provisions together and to regard each provision of the policy as part of the overall bargain.

Nevertheless, despite statutory and policy differences, some courts have applied the *inter*-policy rationale to *intra*-policy stacking cases, asserting that for consistency's sake, the result should be the same in either case. A good example is *Lundy* v. *Aetna Casualty & Surety Co.*, 92 N.J. at 556-57, 458 A.2d at 109, where the court stated:

> We have previously observed that each automobile must have an insurance policy and that each policy must include uninsured motorist coverage. [The company] has not advanced any persuasive reason why it should make any difference from a statutory standpoint if there is one set of papers for three cars in which separate uninsured motorist insurance coverage is provided for each vehicle or three identical sets of papers for three cars. The fact that administratively an insurance company lumps two or more cars in one insurance contract, which provides individualized insurance coverage, does not mean that only a single "policy" has been issued for statutory purposes.

The court's underlying assumption is that one policy covering several vehicles is identical in legal effect to several policies covering the same vehicles. No supporting rationale is offered for that proposition. An agreement which offends public policy is no less offensive if divided into several separate documents.

■ Under Vermont practice if " 'confusion or ambiguity does not appear, then the statute is not construed but rather is enforced in accordance with its express terms.' " *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 529, 496 A.2d 154, 162 (1985) (quoting *Heisse v. State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983)). It is for the plaintiff to demonstrate why confusion or ambiguity beclouds a statute that appears clear on its face. This she has not done. Since § 941 mandates only that each *policy* contain minimum UM benefits for each covered person, no basis has been shown here for treating a single policy as the equivalent of several policies, where there is no statutory basis to do so.

Plaintiff also relies on *Chaffee v. United States Fidelity & Guaranty Co.*, 181 Mont. 1, 591 P.2d 1102 (1979), as a case that found in a statute very similar to Vermont's an affirmative purpose to allow stacking. The court there stated:

> The cases that have directed combining policy limits have done so for the most part because they have considered it an anomaly that an insurer *could effectively prevent combining* by including several vehicle coverages in a single policy, if the insurer would be liable up to the combined limits if it insured several vehicles under separate policies.

*Id.* at 4, 591 P.2d at 1103 (citation omitted) (emphasis added). The court in *Chaffee* found an affirmative purpose to allow stacking in its text. However, the rationale for that reading is unclear from the report. We can find no such purpose in the text of the Vermont law, which neither promotes nor prohibits stacking. Since our statute is neutral and the intention to prohibit stacking in the insurance policy is clear, plaintiff's argument under 23 V.S.A. § 941 cannot prevail. See *Goodville Mutual Casualty Co. v. Borror*, 221 Va. 967, 970, 275 S.E.2d 625, 627 (1981).

### III. Unconscionability

Plaintiff offers two arguments against enforcement of the policy's anti-stacking provision on grounds of unconscionability. The first is that such language "deprives the insured of benefits for which a premium was paid." *Government Employees Insurance Co. v. Brown*, 446 So. 2d 1002, 1006 (Miss. 1984); accord *Allstate Insurance Co. v. Maglish*, 94 Nev. 699, 703, 586 P.2d 313, 315 (1978). Key to the rationale in these cases is the analysis of

whether particular policy language in fact "deprives the insured of benefits for which a premium was paid." *Government Employees Insurance Co.*, 446 So. 2d at 1006.

The plaintiff has not here made such a showing. Defendant concedes that insured family members receive no higher benefit amounts from the additional UM premiums, whether injured while riding in one of the covered vehicles or not. Family members are fully covered under the policy for injuries sustained by the negligence of uninsured motorists through the coverage provided by payment of the first premium. But it does not follow, simply because benefit amounts do not increase when additional cars are added to the policy's coverage, that the company's risks do not increase. As the number of vehicles that can be driven increases, the risk of accident involving an uninsured motorist increases as well. As the New Hampshire Supreme Court said in *Grimes* v. *Concord General Mutual Insurance Co.*, 120 N.H. 718, 721, 422 A.2d 1312, 1315 (1980):

> When an insured owns two vehicles that are constantly available for use, not only by him, but by members of his family and others, the risk that someone operating one of those vehicles will be involved in an accident with an uninsured motorist is obviously greater than if only one vehicle were available for use.

It is apparent that additional vehicles owned by the insured's family increase the opportunities for family members and their guests to be in accidents with uninsured motorists, and that the company bears that additional risk.

However, plaintiff labels as illusory the additional risks incurred by the insurer because of the additional cars listed and covered under the single policy. Plaintiff correctly points out that since under § 941 the policy must cover the insured and his family for accidents incurred while traveling in *any* vehicle, the defendant's single policy necessarily covers accidents involving other family vehicles. Without considering the added risk of non-family members in the additional cars, the implication of plaintiff's position is that the company's consideration for the premiums on the second, third, and fourth vehicles consisted only of its promise to perform an already existing duty under law and that its promise was illusory. See *In re Newcomb*, 744 F.2d 621, 624 (8th Cir. 1984); Restatement (Second) of Contracts § 73 (1981).

Plaintiff concludes that unless she is permitted to aggregate the UM coverage on the four vehicles, the additional premiums for the second, third and fourth cars do not buy additional coverage.

The argument is unpersuasive. First, the policy provided UM coverage for any persons occupying a covered vehicle, not just family members. All passengers in any of the family vehicles were entitled to UM benefits in the event of an accident with an uninsured motorist. While the insurer's risk as to family members involved in an accident with an uninsured motorist remains the same for that accident whether or not they were in an automobile insured under the policy, the potential for a substantially greater exposure arises when the other vehicles are occupied by non-family members.

Even apart from this specific additional risk, in the absence of a showing that an insurer has taken unfair advantage of a consumer in the drafting of a policy, we should leave the contracting parties to their bargain. If a consumer believes that additional UM premiums for additional vehicles are unwarranted, he can decline the insurer's terms for the additional vehicles and insure them elsewhere, without losing the full scope of UM coverage mandated by § 941 under the policy on the first vehicle. No judicial intervention is needed to assure a policyholder of the benefits of insuring each car with a different insurer or separate policies with the same insurer if that is the choice elected. The potential detriments of that election (such as higher total premiums for multiple policies) are also for the policyholder to ponder. However, if the policyholder chooses one policy with one carrier for all family vehicles and the policy contains a clear and unambiguous limit of liability, he may not be heard to complain about separate UM premiums, so long as the additional premiums are accompanied by additional risks for the company, as we have determined there were in the present case.

It would be unwarranted, at least on the present record, to conclude that the distinction between purchasing one policy covering all family vehicles or purchasing separate policies for each family vehicle honors form over substance, as some courts have opined in similar cases. *Lundy*, 92 N.J. at 560, 458 A.2d at 111. The distinction under § 941 honors valid marketplace choices both for the company and the insured and neither offends 23 V.S.A. § 941 nor questions the considerations that have led other states to bar enforcement of inter-policy anti-stacking provisions. Where, as

here, an insurer seeks within a single policy to assess additional premiums for additional risks, and those additional risks are not illusory, to bar that option would be effectively to require higher mandatory UM coverage as a condition to the sale of all insurance covering more than one vehicle—a result that only the legislature should have the power to effect.

Plaintiff argues that in any event a policyholder paying multiple premiums has a reasonable expectation of receiving multiple UM benefits. It is clear that many of the cases allowing stacking in single-policy cases because of a policyholder's "reasonable expectations" rely on the analogy to "reasonable expectations" in multiple policy cases. Referring to the precedents allowing stacking of *separate* policies, one court has stated:

> It is reasonable to expect the same coverage where comparable premium dollars are paid to insure the same two cars, for convenience, under a *single* policy. A combination coverage should not be the predicate for an exclusion of coverage. Such a result would allow a simple change in form to defeat the insured's reasonable expectation, as well as the substance of the law.

*Allstate Insurance Co.* v. *Maglish,* 94 Nev. at 703, 586 P.2d at 315 (citation omitted) (emphasis added); see *Courtemanche* v. *Lumbermens Mutual Casualty Co.,* 118 N.H. 168, 173, 385 A.2d 105, 108 (1978); *Taft* v. *Cerwonka,* 433 A.2d at 218. But the conclusion in *Maglish* that it is reasonable to expect multiple recoveries under a single policy because that is a rational expectation under separate policies erroneously assumes that the two cases are fundamentally the same. As stated earlier, they are not. Hence, a "simple change in form" may properly suggest a significant change in the outcome of each case, just as any alteration in the language of any agreement may alter its effect.

In the absence of ambiguity in the agreement, a statutory violation, or inherently unfair or misleading language, we should give effect to the plain meaning of the policy's prohibition against stacking of uninsured motorist claims. *Clark* v. *Cooperative Fire Association,* 141 Vt. 321, 323, 448 A.2d 155, 156 (1982); *Roy's Orthopedic, Inc.* v. *Lavigne,* 145 Vt. 324, 326, 487 A.2d 173, 175 (1985); *Goodville Mutual Casualty Co.* v. *Borror,* 221 Va. at 969, 275 S.E.2d at 627. In the final analysis a policy meets the consumer's expectations if the issuer complies with statutory require-

ments in every respect; if policy language limiting liability within a single policy is clear; and if additional premiums within the policy relate to additional risks.

*Affirmed.*