### Jerald D. and Allison WATERS v. THE CONCORD GROUP INSURANCE COS.

[725 A.2d 923]

No. 97-462

January 14, 1999. Defendant Concord Group Insurance Companies appeals from a summary judgment determining that plaintiffs Jerald and Allison Waters were entitled to recover up to the full per occurrence limits on their insurance policy as well as the policy held by their adult daughter, Jennifer, who suffered severe injuries when she was struck by a motorcycle. Concord Group also appeals the court's ruling that the Waters were entitled to recover for their temporary loss of consortium with Jennifer. We reverse.

The material facts are undisputed. On July 8, 1995, an uninsured motorcyclist* struck eighteen-year-old Jennifer Waters as she stood in a store parking lot. Jennifer's resulting medical expenses exceeded $200,000. Jennifer had uninsured motorist ("UM") coverage under separate automobile insurance policies issued to her and to the Waters by Concord Group. Both policies at issue contained a "Split UM Limits Endorsement." Jennifer's policy provided UM coverage in split limits not to exceed $25,000 per person and $50,000 per occurrence. The Waters' policy provided UM coverage in an amount not to exceed $100,000 per person and $300,000 per occurrence. The policies' combined maximum UM coverage was $125,000 per person, and $350,000 per occurrence.

Following the accident, Concord Group paid Jennifer $125,000, the total UM coverage available under the two policies for bodily injuries suffered by one person. The Waters then filed this action for declaratory judgment, alleging that they were entitled to recover for their loss of consortium with Jennifer up to the per occurrence limits of the policies, or $350,000. The parties filed cross-motions for summary judgment. Following a hearing, the court granted the Waters' motion. The court concluded that a policy endorsement which purported to limit UM coverage to the maximum amount available for injury per person, in this case $125,000, was ambiguous and therefore not effective. The court further ruled that the Waters were entitled to recover for

_____

*Both driver and owner of the motorcycle were uninsured.

their loss of consortium with Jennifer. This appeal followed.

Before addressing the substantive issues on appeal, we first consider the appropriate standard of review. Generally, a trial court's findings will not be disturbed unless they are clearly erroneous. See V.R.C.P. 52(a)(2); *Gannon v. Quechee Lakes Corp.*, 162 Vt. 465, 469, 648 A.2d 1378, 1380 (1994). Construction of the language in an insurance contract, however, is a matter of law, not a factual determination. See *Imperial Cas. & Indem. Co. v. State*, 714 A.2d 1230, 1235 (Conn. 1998). Therefore, this Court must make its own inquiry into the proper legal effect of the terms of the agreement, employing the trial court's valid findings of fact. See *Gannon*, 162 Vt. at 469, 648 A.2d at 1380.

Concord Group first contends that the court erred in concluding that the language of a policy endorsement relating to UM coverage should be disregarded because it contradicted express provisions of the policies. An understanding of the issue requires a brief description of the terms and structure of the policies at issue.

Both policies were comprised of a "Declarations" section, a multi-page "Policy Form" explaining the basic coverage provisions, and endorsements which modified the provisions of the Policy Form. The Declarations section provided policy information particular to the insured, such as the policy period, the applicable coverage, the monetary limits of the coverages, the premium amount, and the endorsements included in the policy.

The applicable endorsements listed at the bottom of the Declarations page of Jennifer's policy were described as: "FORMS: PP0309 PP0499 PP0496* PP0172* CI0018*." The endorsement forms applicable to the Waters' policy were listed at the end of the second Declarations page as follows: "FORMS: PP0309 PP0499 PP0496* PP0305

PP0172* CI0018* PP0303." Page ten of the Policy Form contained the following statement at the top of the page:

**The Personal Auto Policy form included herewith is amended by the following endorsements when shown in the declarations:**

In addition, both policies stated at the bottom of the cover page of the Policy Form, in uppercase letters, as follows: "THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY."

Explanation of UM coverage commenced with Part C of the Policy Form, which stated in relevant part:

**LIMIT OF LIABILITY**
The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made . . . .

This was followed in the endorsements section with a provision which stated as follows:

PP 04 99 01 87
**SPLIT UNINSURED MOTORIST LIMITS — VERMONT**

The first paragraph of the Limit of Liability provision in the Uninsured Motorists Coverage Endorsement is replaced by the following:

**LIMIT OF LIABILITY**

The limit of bodily injury liability shown in the Schedule or in the Declarations for each person

for Uninsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of bodily injury liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages arising for "bodily injury" resulting from any one accident. . . . Our maximum limit is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made . . . .

The effect of the foregoing endorsement was thus to *limit* UM coverage to damages arising out of physical injury to each injured person, which in this case limited recovery to $125,000. The trial court concluded, however, that the endorsement contradicted the initial statement of UM coverage in the Policy Form, rendering it ambiguous, and that a reasonable insured would not have understood that the endorsement controlled. The court further ruled that the restrictive language of Endorsement PP 04 99 01 87 did not effectively modify the policies' UM coverage because it was not clear whether "FORM PP0499" listed on the Declarations page was the same as "Endorsement PP 04 99 01 87" found in the policies.

The first issue on appeal is whether the trial court properly disregarded the restrictive endorsement because it allegedly contradicted the express provisions of the policies. Proper insurance contract interpretation requires that the policy provisions be read together and viewed as an integrated whole. See *Suchoski v.*

*Redshaw*, 163 Vt. 620, 622, 660 A.2d 290, 292 (1995) (mem.). An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language. See *Cooperative Fire Ins. Ass'n of Vt. v. Gray*, 157 Vt. 380, 383, 599 A.2d 360, 362 (1991). Any disputed terms are to be given their plain, ordinary and popular meaning. See *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127-28, 655 A.2d 719, 721 (1994). The court is further bound to enforce the contract as written and not to rewrite it on behalf of one or both of the parties. See *Medlar v. Aetna Ins. Co.*, 127 Vt. 337, 347, 248 A.2d 740, 747 (1968).

As noted, information concerning UM coverage appeared in two separate places in the policy. The first appearance was on page five of the policies under the section entitled PART C — UNINSURED MOTORISTS COVERAGE. Part C referred only to a single "LIMIT OF LIABILITY," but did not address split limits — UM or otherwise. The subsequent endorsement on page ten entitled SPLIT UNINSURED MOTORIST LIMITS — VERMONT explained the per person and per occurrence UM coverage limits. Furthermore, the endorsement explicitly stated that the split limits endorsement "replace[d]" the first paragraph of the Limit of Liability provision on page five. The top of page ten also instructed the policy holder as to the effect of the endorsement: **"The Personal Auto Policy form included herewith is amended by the following endorsements when shown in the declarations."** Therefore, the split UM limits endorsement on page ten clearly replaced the Limit of Liability language on page five. Accordingly, we are not persuaded that the provisions were ambiguous or contradictory. See *Suchoski*, 163 Vt. at 622, 660 A.2d at 292 (insurance contract must be interpreted by looking at its provisions together and viewing them in their entirety). Accord-

ingly, we conclude that the endorsement was effective and controlling.

The next issue is whether the court correctly concluded that the endorsement was ineffective because it did not appear in the policy precisely as it was described on the Declarations pages. As noted, the UM endorsement listed on the Declarations page was described as "PP0499." The endorsement in the polices was numbered "PP 04 99 01 87." Thus, the Declarations listing omitted the last four digits of the actual endorsement, which referred to the month and year the endorsement was added to the Concord Groups' auto policy.

Our rules for resolving ambiguity in the construction of insurance contracts are well settled. Ambiguity arises only "where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Webb v. United States Fidelity & Guar. Co.*, 158 Vt. 137, 139, 605 A.2d 1344, 1346 (1992) (citation omitted). Any ambiguity in policy language should be resolved in favor of the insured. See *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 500, 536 A.2d 914, 916 (1987). Although ambiguities are to be strictly construed in favor of the insured, the insurer is not to be deprived of unambiguous provisions included in a policy for its benefit. See *Suchoski*, 163 Vt. at 622, 660 A.2d at 292. With these rules in mind, we examine the claim of ambiguity.

It is not uncommon in insurance agreements for two or more clauses or phrases in different parts of a policy to vary slightly. See, e.g., *Sanders*, 148 Vt. at 501, 536 A.2d at 917. In *Sanders*, the plaintiff, who was injured by an uninsured motorist, argued that variations in policy language in the applicable UM provisions created ambiguity. In affirming the trial court's summary judgment in favor of the defendant insurer, we stated:

In the present case the argument for ambiguity is the variance between two parallel provisions of the policy, each dealing with limits of liability. We would apply the variance in language to plaintiff's benefit if she had provided the predicate for doing so by pointing out some reason why Part C could not be interpreted definitively without reference to some other contract provision. Plaintiff has not provided such a reason, and we do not perceive one.

*Id.*

Here, the Waters rest their assertion of ambiguity principally on the code-digit variance between the number listed on the Declarations page and the number on the endorsement in the Policy Form. Apart from their assertion of ambiguity, however, the Waters offer no reasonable alternative interpretation for the meaning of the endorsement form code listed in the Declarations. The first six numbers of each endorsement applicable to the policies are listed as endorsement forms in the Declarations. Our review of the Policy-Form endorsements reveals that each is adequately numbered and clearly labeled. Moreover, the Waters selected and paid for particular insurance coverage for themselves, Jennifer and their automobiles, consistent with the endorsements listed in the Declarations. Thus, we are not persuaded that the contract was ambiguous on this basis.

The final issue on appeal is whether the Waters, or any parents, have a legal right of recovery for temporary loss of consortium with an adult child. Because we hold that the Split UM Limits Endorsement effectively restricted the maximum amount recoverable for bodily injury under the policies, including damages for care and loss of services, we need not reach that issue.

*Reversed.*