2007 VT 31

**Desiree DeBARTOLO v. UNDERWRITERS AT LLOYD'S OF LONDON**

[925 A.2d 1018]

No. 06-027

¶ 1. April 25, 2007. Insurer, Lloyd's of London, appeals the superior court's grant of summary judgment to its insured, Desiree DeBartolo. Insurer argues that the superior court erred: (1) in concluding that the policy it issued to insured provided coverage for damage to a restaurant property she owned, and (2) in finding that insured did not deliberately conceal that she had reopened the restaurant before the loss. We affirm.

¶ 2. The facts, which were largely stipulated below, may be briefly summarized. Ms. DeBartolo owned a restaurant property in Poultney, Vermont. She closed the restaurant in the fall of 2000 and let her commercial insurance lapse. The holder of the mortgage on the property demanded that Ms. DeBartolo obtain property coverage sufficient to pay the $92,000 outstanding mortgage debt. Accordingly, in March of 2001, Ms. DeBartolo applied, through her agent, for a six-month policy with a property coverage limit of $92,000, enough to cover the balance on the mortgage.[1] Ms. DeBartolo represented, on the application, that the restaurant was "closed for the season."

---

[1] The policy also provided commercial general liability (CGL) coverage with limits of $500,000 per occurrence and $1,000,000 in the aggregate. Ms. DeBartolo made no claim under that coverage.

¶ 3. Ms. DeBartolo's agent placed the coverage with Lloyd's of London through one of its United States agents, S&H Underwriters. Lloyd's is a surplus lines insurer in Vermont, and therefore can issue coverage only if it is not reasonably available from other sources. 8 V.S.A. § 5024. The agent sent Ms. DeBartolo a copy of the policy, which was effective March 14, 2001, along with a letter on May 1, 2001. The letter stated that if Ms. DeBartolo decided to reopen the restaurant, she must notify the agent so that he could "make the necessary changes regarding the insurance." Ms. DeBartolo received the letter and the policy before the loss but did not read either. The policy's Declarations page described the covered property as a "vacant restaurant" on Route 30 in Poultney. The policy explicitly provided coverage for property damage resulting from fire, with several pages of specific exclusions and limitations delineating risks not covered. No exclusion or limitation stated that the reopening of the restaurant would void the coverage. The policy also included a vacancy permit, which provided that the "VACANCY Loss Condition does not apply to direct physical loss or damage: (1) At the location; and (2) During the Permit Period; shown in the Schedule or in the Declarations."

¶ 4. Ms. DeBartolo opened the restaurant for business on May 26, 2001. At some point in the preceding days, a plumbing leak soaked a carpet, which Ms. DeBartolo attempted to dry using a kerosene heater. The heater caused a fire on May 30, 2001, resulting in damage to the restaurant exceeding the policy's property coverage limit. Ms. DeBartolo concedes that the restaurant was not vacant at the time of the loss.

¶ 5. Lloyd's denied coverage for the loss, contending that the policy provided property coverage only while the restaurant remained vacant, and asserting that

Ms. DeBartolo had intentionally concealed a known material fact — the reopening — both at the time of the loss and when she applied for coverage. Ms. DeBartolo commenced a breach-of-contract action against insurer in 2003, also alleging that insurer's denial of coverage was made in bad faith. Insurer raised as defenses the same claims it raised in the denial letter. The parties stipulated to the above-detailed facts and submitted cross-motions for summary judgment.

¶ 6. The superior court concluded that the policy was ambiguous as to whether coverage would continue if the restaurant reopened. The court therefore construed the policy in favor of Ms. DeBartolo, granted her motion for summary judgment, and ordered Lloyd's to pay the full property-coverage amount, less the $500 deductible, plus prejudgment interest and costs. The superior court later issued a supplemental finding that Ms. DeBartolo had not concealed from Lloyd's that she had reopened the restaurant.[2] This appeal followed.

I.

¶ 7. Lloyd's argues, first, that the trial court erred in granting summary judgment to Ms. DeBartolo because the policy's plain language unambiguously limits property coverage to a vacant restaurant. It notes that the policy's Declarations page describes the covered property as a vacant restaurant, and contends that this description is material to, and limits the extent of, property coverage under the policy. DeBartolo asserts, by contrast, that the policy is at best ambiguous as to whether property coverage would continue when the restaurant reopened, and should therefore be construed in favor of finding coverage.

---

[2] The superior court also found that neither party acted in bad faith.

¶ 8. We review a grant of summary judgment de novo, applying the same standard as the trial court. *Town of Lunenburg v. Supervisor & Bd. of Governors of Unorganized Towns & Gores of Essex County*, 2006 VT 71, ¶ 6, 180 Vt. 578, 908 A.2d 424 (mem.). We will affirm a grant of summary judgment when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *Zukatis v. Perry*, 165 Vt. 298, 300, 682 A.2d 964, 965 (1996). If both parties seek summary judgment, each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990). When no issues of material fact remain, we will conduct a plenary, nondeferential review of the questions of law presented by the summary judgment motion. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82.

¶ 9. We interpret insurance policies much like other contracts, striving to give effect to the intent of the parties as expressed by the plain language of the instrument. *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 500, 536 A.2d 914, 916 (1987). Any ambiguities in insurance policies are construed in favor of finding coverage. *Id.* As with other contracts, the determination of ambiguity is a question of law, and our review is nondeferential and plenary. *Ferrill v. N. Am. Hunting Retriever Ass'n*, 173 Vt. 587, 590, 795 A.2d 1208, 1211 (2002) (mem.). However, an insurer should "not . . . be deprived of unambiguous provisions placed in a policy for its benefit." *Peerless Ins. Co. v. Wells*, 154 Vt. 491, 494, 580 A.2d 485, 487 (1990). Accordingly, we will "enforce the contract as written and not . . . rewrite it on behalf of one . . . of the parties." *Waters v. Concord Group Ins. Cos.*, 169

Vt. 534, 536, 725 A.2d 923, 926 (1999) (mem.). It is "appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988); cf. Official Comment, 9A V.S.A. § 2-202 ("This section definitely rejects: . . . [t]he premise that the language used [in a commercial sales contract] has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used.")

¶ 10. We note at the outset that, while there is copious case law concerning the interpretation of vacancy provisions in property policies, neither party has found, and nor have we, any case presenting closely analogous facts and claims to these. The typical vacancy-provision case concerns virtually the opposite circumstance from that present here: an insured property becomes arguably vacant, thereby possibly voiding coverage by operation of a vacancy provision that explicitly conditions coverage on the property's remaining occupied. See, e.g., *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538 (11th Cir. 1995); *Niagara Fire Ins. Co. v. Everett*, 292 F.2d 100, 104 (5th Cir. 1961); *Home Mut. Fire Ins. Co. v. Pierce*, 402 S.W.2d 672, 674 (Ark. 1966); *Aguiar v. Generali Assicurazioni Ins. Co.*, 715 N.E.2d 1046, 1047 (Mass. App. Ct. 1999).

¶ 11. Other superficially analogous cases are those concerning builder's-risk coverage, which is commonly issued to builders to cover the risk of property loss during construction, and is often expressly conditioned on a building's continued vacancy. Builder's-risk-coverage cases often arise when a building is occupied upon completion, but a claim is nonetheless made under the builder's-

risk coverage. See, e.g., *Peerless Ins. Co. v. Bailey Mortgage Co.*, 345 F.2d 14, 15-16 (5th Cir. 1965) (applying Mississippi law); *Water St. Dev., Ltd. v. J.W. Corr Agency, Inc.*, 539 A.2d 967, 967-68 (R.I. 1988). Here, by contrast, no express provision voided the property coverage upon the restaurant's reopening. The builder's-risk cases are therefore inapposite.

¶ 12. Lloyd's cites a number of cases in support of the proposition that coverage should be limited to the premises described in the declarations. However, all arose from facts very different from those present here. In *Evergreen National Indemnity Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 678 (Tex. Ct. App. 2003), a property policy was held not to cover a theft loss that occurred 100 feet away from the premises described in the declarations. This is plainly inapposite to the case at bar, where the disputed loss occurred at the location described in the declarations. Indeed, if *Evergreen* has any impact on our analysis, it is to highlight the usual purpose of the premises description in the declarations: to describe a location, not to proscribe the use to which the premises are put, a function served by other policy provisions. In the instant case, for example, Ms. DeBartolo's CGL coverage was expressly limited, by a policy provision other than the premises description in the declarations, to "locations *and operations* that are described on the Declarations page." (Emphasis added.) Reading the policy as a whole, the fact that Lloyd's expressly limited the liability coverage to "operations" described on the declarations page militates in favor of finding property coverage for the fire loss at issue here. Had Lloyd's intended also to condition property coverage on the continued vacancy of the restaurant, the language limiting the CGL coverage could simply have been extended to limit the property coverage as well.

¶ 13. Similarly unhelpful to Lloyd's is *Ruiz v. State Wide Insulation & Construction Corp.*, 703 N.Y.S.2d 257, 258-59 (App. Div. 2000) (mem.), in which the declarations page and an endorsement expressly limited insured operations to "painting," and the appellate court held that the policy therefore unambiguously excluded coverage for losses resulting from other operations. *Ruiz* serves only to highlight the very different policy language here.

¶ 14. Lloyd's reliance on *Pfeiffer v. Grocers Mutual Insurance Co.*, 379 A.2d 118 (Pa. Sup. Ct. 1977), is also misplaced. In *Pfeiffer*, the insured demolition company sought coverage for damages resulting from its unauthorized demolition of two structures. *Id.* at 119. The liability policy listed seven structures for the demolition of which the policy provided coverage. *Id.* The seven listed structures were all on one side of an existing street, and were to be destroyed in order to clear a right of way for a new roadway. *Id.* at 119-20. The two structures whose demolition gave rise to the claim were not listed in the policy and were across the street, outside of the right of way. *Id.* at 120 n.1. In the instant case, by contrast, Lloyd's disclaims coverage because the described premises was put to a different use from that mentioned in the declarations. *Pfeiffer* offers no support for Lloyd's position.

¶ 15. Lloyd's also cites *Wickramasekra v. Associated International Insurance Co.*, 890 So. 2d 569 (La. Ct. App. 2003), a case somewhat closer to the mark. In *Wickramasekra*, the plaintiff was visiting a friend's workplace and was injured while helping the friend move palm trees with a forklift. The plaintiff sued his friend's employer and the employer's CGL carrier, alleging negligence. The business description on the CGL policy's

declarations page, in conjunction with a "classification limitation" endorsement, limited coverage to damages resulting from "loading and unloading of equipment." *Id.* at 571. The trial judge granted summary judgment for the insurer, noting that palm trees are not "equipment." *Id.* The appellate court affirmed, noting that it was "unable to characterize or define a palm tree as equipment" and describing the plaintiff's contention to the contrary as "without merit." *Id.* at 574.

¶ 16. Lloyd's attempts to bring *Wickramasekra* into concord with the instant case by characterizing the property coverage's "Description of Premises" as having been intended to "identify the premises *and business activity* to which the insurance relates." (Emphasis added.) But this overstates the importance of the premises description and ignores the rest of the policy, with which it must be construed as part of an integrated whole. *Concord Gen. Mut. Ins. Co. v. Madore*, 2005 VT 70, ¶ 12, 178 Vt. 281, 882 A.2d 1152. Here, the policy provided property coverage "for direct physical loss of or damage to Covered Property at the premises described in the Declarations." This language undercuts Lloyd's claim that the premises description was intended to limit anything more than the physical location covered. Further, as noted *supra*, ¶ 12, Lloyd's did expressly limit CGL coverage to "locations and operations" described in the declarations, but did not similarly limit the property coverage. We therefore decline to follow Lloyd's narrow reading of the property-coverage premises description, which would render the policy's express limitation on CGL coverage mere surplusage. See *Vt. State Colls. Staff Fed'n v. Vt. State Colls.*, 157 Vt. 645, 646, 596 A.2d 355, 357 (1991) (mem.) ("In construing [a] contract, we must give

effect to every material part, if possible.").

¶ 17. The vacancy permit in the property policy also supports a finding of property coverage for the fire loss. The typical vacancy permit voids the vacancy loss condition — also sometimes known as an occupancy clause — in a property policy. A vacancy loss condition, when not voided by a vacancy permit, suspends property coverage when the subject property is unoccupied for a specified period. "The purpose of an occupancy clause is to avoid liability where the risk has been increased by vacancy." 6A L. Russ & T. Segalla, Couch on Insurance § 94:102, at 94-111 (3d ed. 2000). The vacancy permit in this case provided that the "Vacancy Loss Condition does not apply to direct physical loss or damage: (1) At the location; and (2) During the *Permit Period; shown in the Schedule or* in the Declarations." The vacancy permit simply allowed, but did not mandate, vacancy.

¶ 18. Lloyd's also makes much of the fact that it is a surplus lines insurer in Vermont, and is therefore authorized to write policies only when "the full amount of insurance required is not reasonably procurable from admitted insurers." 8 V.S.A. § 5024(a).[3] Lloyd's asserts, in essence, that it would not, as a surplus lines insurer, have been allowed to issue a policy to a restaurant that would reopen at any time during the policy period. We disagree.

¶ 19. Even assuming, arguendo, that Lloyd's is correct that it could not have issued this policy to a restaurant that was open at the time of the application be-

---

[3] Our law also provides that "contracts procured as surplus lines insurance ... shall be valid and enforceable to the same extent as insurance contracts procured from admitted insurers." 8 V.S.A. § 5029.

cause such coverage would have been readily available from Vermont insurers, we part ways with Lloyd's when it construes the policy to avoid coverage as soon as the restaurant reopened. Surplus lines coverage would not only have been available to a permanently vacant restaurant, but also to one that was vacant when the policy was purchased but would reopen during the policy period; the latter coverage would not have been any more "reasonably procurable" from admitted insurers than the former. *Id.* Lloyd's status as a surplus lines insurer does not militate strongly, if at all, in favor of construing this policy against Ms. DeBartolo.

¶ 20. Further, Lloyd's claim that the property coverage would be void upon the restaurant's occupancy is belied by its letter to insured, in which Lloyd's agent requested that Ms. DeBartolo notify insurer when the restaurant reopened so that insurer "could make the necessary changes regarding the insurance." This language is not sufficient to impose an obligation on insured to notify insurer prior to the restaurant's reopening in order to retain property coverage. See *Patrons Mut. Ins. Co. v. Rideout*, 411 A.2d 673, 678 (Me. 1980) ("Absent a special agreement, the insured who makes particular representations in the application for insurance is not obligated to inform the insurer of changes in circumstances occurring *after issuance of the policy* which are inconsistent with the representations in the application."); 6 Couch on Insurance § 84:9, at 84-15 ("[I]t is unreasonable to impose on the insured a continuing duty to notify the insurer of any change which would materially affect the ... continuation of the risk."). The language of the letter is not the sort of explicit "special agreement" the *Rideout* court contemplated.

¶ 21. In sum, the premises description in the instant case, the policy's explicit

exclusion of several causes of loss other than opening the restaurant, the policy's explicit limitation of CGL coverage to operations described in the declarations, and the vacancy permit all support the superior court's grant of summary judgment. The policy, read as a whole, may reflect a presumption on insurer's part that the restaurant would remain vacant. It does not, however, unambiguously provide that coverage will end upon the reopening of the restaurant. At most, the policy is ambiguous as to whether property coverage would continue when the restaurant opened. It virtually needs no citation to say that ambiguities in insurance policies are to be construed against the insurer, who created them. *Sanders*, 148 Vt. at 500, 536 A.2d at 916. The superior court's grant of summary judgment to Ms. DeBartolo was proper.

## II.

¶ 22. Lloyd's next argues that the superior court erred in finding that Ms. DeBartolo did not conceal the restaurant's reopening. The superior court did not explicitly so find in its initial order, but later issued a supplemental finding stating that Ms. DeBartolo "did not conceal from [Lloyd's] that she had reopened the restaurant." The property policy was subject to a condition voiding the policy if Ms. DeBartolo should, "at any time, intentionally conceal or misrepresent a material fact concerning: (1) This Coverage Part; (2) The Covered Property; (3) [her] interest in the Covered Property; or (4) A claim under this Coverage Part." Ms. DeBartolo argues, in response, that the record supported the trial court's finding and that, at worst, she was negligent in failing to alert Lloyd's that the restaurant had reopened.

¶ 23. We review trial court findings of fact for clear error, and will sustain them when there is any credible evidence in the record to support them. *Lawrence v.*

*Pelletier*, 154 Vt. 29, 33, 572 A.2d 936, 939 (1990). It is the province of the trial court to judge the credibility of witnesses and the weight of evidence, *Solomon v. Atlantis Dev., Inc.*, 147 Vt. 349, 354, 516 A.2d 132, 135 (1986), but we will set aside findings of fact when they are wholly unsupported by any evidence. *Bookstaver v. Town of Westminster*, 131 Vt. 133, 141, 300 A.2d 891, 896 (1973). As a general matter, a finding of intentional concealment of a material fact would require evidence of intent; "[m]ere silence . . . is not concealment, at least in the absence of specific inquiry." 6 Couch on Insurance § 81:21, at 81-36 to -37.

¶ 24. Even if the restaurant's opening were a material fact, the superior court did not err in finding that Ms. DeBartolo did not intentionally conceal it. Although there was also evidence arguably to the contrary, there was credible evidence supporting the trial court's finding. Ms. DeBartolo testified that she did not tell Lloyd's about the restaurant opening because she "didn't think of it." She further testified that she had only a rudimentary understanding of the impact of the restaurant's vacancy on her insurance coverage. We will not, on appellate review, disturb the trial court's decision to credit this testimony over the conflicting testimony offered by insurer. See *Solomon*, 147 Vt. at 354, 516 A.2d at 135.

*Affirmed.*