Charleboi v. Liberty Mutual Insurance Group, No. S0488-04 CnC  (Norton, J., Aug. 31, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                SUPERIOR COURT
Chittenden County, ss.:                          Docket No. S0488-04 CnC

CHARLEBOIS

v.

LIBERTY MUTUAL INS. GROUP


ENTRY


        Plaintiff Charlebois and Defendant Insurer move for summary judgment on a declaratory judgment that seeks to define Insurer's responsibility to defend and indemnify Charlebois for damages sustained by a third party.  Both sides argue that there are no issues of material fact and that the interpretation of the policy's "care, custody, or control" exclusion for third-party property damage is the only determination left for the court.

Briefly, the facts of this case arose in June 2002. The owner of a tractor-trailer, which had become stuck off of Route 2A, hired Mr. Charlebois to pull it back onto the road. While Mr. Charlebois was towing the truck out of the ditch, it tipped over and sustained property damage. The owner of the tractor-trailer filed suit in this court against Mr. Charlebois for damages. This suit, which is separate from the present one, remains pending. Continental Transport, Inc. v. Raymond Charlebois, Inc., No. S0148-04 CnC. The owner's alleged damages include two categories of losses: direct physical damage to the tractor-trailer and subsequent time and income losses that the company claims as a result of being deprived of the tractor-trailer's use. Insurer has refused to defend Mr. Charlebois in that litigation or indemnify him for any of the damages because it claims that they are excluded under the following provision of Mr. Charlebois's insurance policy:

> B. Exclusions
> This insurance does not apply to any of the following:
> *        *        *
> 6. Care Custody Or Control
> "Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control.

(Def's Mot. for Summ. J., at Ex. 2, Vermont Changes in Business Auto, Truckers and Motor Carrier Coverage Forms—Pollution CA 01 85 03 94, at 1, May 13, 2005.) Insurer argues that the tractor-trailer was under the "care, custody or control" of Mr. Charlebois when it tipped over and that his "control" over it excludes it from the insurance policy. Mr. Charlebois argues that he did not exercise "care, custody or control" over the tractor-trailer because his job was to move the truck back on the road but not transport it or operate the truck in any fashion.

The sole question then is whether an insured who has temporary control over a vehicle for the sole purpose of moving it out of a ditch exercises the "care, custody or control" over the tractor-trailer necessary to trigger the exclusion.  The answer to this question must begin with an analysis of the underlying insurance policy.  State v. CNA Ins. Cos., 172 Vt. 318, 324 (2001) ("In construing an insurance policy, disputed terms should be read according to their plain, ordinary and popular meaning."). Both sides agree that Mr. Charlebois had a general commercial liability policy through Insurer.  It obliged Insurer to "pay all sums as damages because of 'bodily injury' or 'property damages' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Def's Mot. for Summ. J., at Ex. 2, Liberty Mutual Commercial Policy CA 00 12 07 97, at § II(A), May 13, 2005.)  Insurer argues that the "care, custody or control" exception operates as a limit to this general promise to indemnify by clarifying one area of exclusion to the policy.

Under this argument, Insurer seems to argue that the "care, custody, or control" exception is simply an explicit statement of an implied restriction.  The language of Mr. Charlebois' policy indicates that it was intended to protect his own vehicles and trailers or vehicles and trailers that he had borrowed and was using as his own.  The policy broadly promises to indemnify him for damage to his vehicles or damage done by his vehicles to a third-party.  But the promise of general coverage does not explicitly extend to other vehicles or property that are in Mr. Charlebois's possession but not being used by him.  In other words, the policy does not address or cover the objects of Mr. Charlebois's work, vehicles and trailers that need to be towed short or long distances.  The lack of such coverage when

coupled with the "care, custody or control" exception would appear to signify a limitation that runs with the intent of the policy in light of its language and exceptions.

While this argument demonstrates that it is possible to interpret the insurance policy so that the "care, custody or control" exception does not contradict its intent and purpose, it is not proof in and of itself of the exclusion. Mr. Charlebois argues that his policy was a general liability policy and one that he relied on to protect him from such work-related damages. He urges the court to understand the policy as protecting a far broader sense of the word "use" to include the use of towing vehicles to tow and carry disabled vehicles and their trailers. With this purpose, Mr. Charlebois argues, the "care, custody, and control" exception must be read narrowly and is not triggered by his brief towing.

This brings the analysis back to the meaning of "care, custody, and control" for the purposes of Mr. Charlebois's policy and by extension to the court's determination. Waters v. Concord Group Ins. Co., 169 Vt. 534, 535 (1999) ("Construction of the language in an insurance contract, however, is a matter of law, not a factual determination."). If the exception is a clear limitation on the policy that covers this incident, then Insurer is not obligated to indemnify or defend Mr. Charlebois.[1] If, however, the clause

---

[1] Mr. Charlebois's policy obliges Insurer to defend him in any suit "asking for damages," but his duty to defend is not absolute. Under the policy, Insurer is only required to defend such suits to the extent that the policy applies and is not obligated to defend against claims for damages to which the policy does not extend or an exemption applies. Vermont law extends this duty a little further to any claim that might be of the type covered by the policy. Garneau v. Curtis &

is determined not to exclude Mr. Charlebois's towing activity or if it is determined to be ambiguous, then Insurer must indemnify and defend Mr. Charlebois to the limits and terms of his policy. Northern Security Ins. v. Hatch, 165 Vt. 383, 386 (1996). In determining the "care, custody or control" exception, Insurer has the burden of proving the extent and scope of the exception. CNA Ins. Cos., 172 Vt. at 324.

Insurance companies have frequently used the phrase "care, custody or control" in insurance policy exceptions. Most jurisdictions agree though that, notwithstanding the ubiquity of "care, custody or control" clauses, the analysis remains fact specific and dependent on the relevance of several factors. E.g., 9 L. Russ & T. Segalla, Couch on Insurance 3d § 126.22 (2005) (citing cases). This requires any court interpreting such a provision to look to the underlying purpose of the clause. Generally, the purpose of such clauses is to restrict and define the limits of what an insurer is obliged to cover in situations where the use of an insured vehicle or object is two fold, for transportation and for work product. As one commentator summarized:

> [T]he purpose of the exclusion is to eliminate coverage in situations in which the insured is so closely connected with the property that is damaged or destroyed as to exercise some sort of control over it, to reduce the "moral hazard" to the insurer by removing any advantage to the insured in falsifying or exaggerating a loss, and to prevent the insurer from becoming a guarantor of the insured's workmanship.

---

Bedell, Inc., 158 Vt. 363, 366–67 (1992). For the purposes of the present motion, the court's interpretation on Mr. Chalrebois's right to indemnification will also resolve the duty to defend.

Annot., <u>Scope of Clause Excluding from Contractor's or Similar Liability Policy Damage to Property in Care, Custody, or Control of Insured</u>, 8 A.L.R.4th 563, at § 2[a] (1981, Supp. 2004).  The last reason is particularly applicable in this case as the damage to the tractor-trailer was a direct result of Mr. Charlebois's workmanship or problems surrounding that workmanship.

This purpose also answers the critical question of ambiguity.  In this case, the exclusion serves a discrete purpose of limiting coverage where "property" is damaged that the insured either owns or exercises "care, custody or control" over.  This can be discerned from the plain language of the policy.  Moreover, such a reading is favored by a majority of jurisdictions that have held "care, custody or control" exclusions to be unambiguous as a matter of law if the context in which it is used is clear.  E.g., <u>Neff Towing Serv., Inc. v. U.S. Fire Ins. Co.</u>, 652 N.W.2d 604, 610 (Neb. 2002); 8 A.L.R. 4th 563, at § 3[b] (collecting cases for the "view that clause is free from ambiguity").

Now that the preliminary issues have been addressed, the next step in the analysis is to examine whether or not Mr. Charlebois exercised "care, custody or control" over the tractor-trailer for the purposes of the exclusion.  For this stage, courts in other jurisdictions have adopted two types of relationship tests to determine the function of the clause in the context of the facts.[2]  8 A.L.R.4th 563, at § 5.  In this case, it is not important which

---

[2] The A.L.R.4th divides these into two tests, one dealing with incidental property and the other, with necessary property.  8 A.L.R.4th 563, at § 5.  Most courts, though, treat the two as a single test with the application dependent on the

test the court applies as the result is the same. Both tests are based on the relationship of damaged property to property upon which work is performed. Id. at § 5. They look to the nature of the property in relationship to the work that the insured was performing and ask if it was either incidental or necessary to the work. E.g., Kamieniecki, 188 A.2d at 481–82 (control over walls was incidental to insured's primary job of removing building debris). If the damaged property is determined to be incidental, then the exclusion does not apply because control is never truly given to the insured. E.g., Fish v. Nationwide Mut. Ins. Co., 126 Vt. 487, 491–93 (1967). If, on the other hand, the property is determined to be necessary to the work, then courts have found that the insured exercises control over the object by implication. E.g., Cassion Corp. v. Home Indem. Corp., 502 N.E.2d 1168, 1170 (Ill. App. 1986) (necessity conceded by insured who directed cement truck's operation even while not physically operating it).

In this respect, the Fish case is particularly illuminating. 126 Vt. 487. The Vermont Supreme Court in Fish sought to interpret a "control" exclusion similar to the present case. Id. at 489 ("in charge of the insured"). The plaintiff, Mr. Fish, went to a gravel pit where he found a shaker screen owned by a third-party. Id. This screen blocked the gravel that Mr. Fish needed; so he obtained permission to move the screen from the gravel pit owners who were storing the screen for another. Id. After towing the screen a short bit, it fell over and suffered damage. Id. Mr. Fish's insurance company disclaimed any responsibility to either indemnify or defend him based on an exclusion in his policy that excluded damage to the transporting of "property rented to or in charge of the Insured . . . ." Id.

---

determination. See, e.g., Newfoundland Am. Ins. Co. v. Kamieniecki, 188 A.2d 480, 481–82 (N.H. 1963)

The Court held that Mr. Fish was not in control of the shaker screen for the purposes of the exception. Id. at 493. The Court based its holding on two conclusions. First, the Court reasoned that, since the screen had not left the gravel pit (nor did Mr. Fish intend it to), it was not "transported" within the meaning of the exclusion's language—that is from one locality to another. Id. Second, the Court concluded that the owners of the screen had given control and possession of the screen to the owners of the gravel pit, but they had not turned this control over to Fish. Id. Instead, he was given limited permission to move the screen and lacked "possession, dominion, or control" over it. Id. For both reasons, the exclusion did not apply.

Like Mr. Fish, Mr. Charlebois was given permission by the owners of the tractor-trailer to move it out of the ditch, but the purpose of this move was not incidental to Mr. Charlebois. Unlike Mr. Fish, who moved the screen only to get at what he truly sought (gravel), Mr. Charlebois's towing was his job, what he was being paid to do. It was necessary to his work, and as a result, he exercised control over the tractor-trailer for the purposes of the exclusion.[3] This conclusion makes sense in light of the purpose of the exclusion. While the policy covers accidents that occur to, or are

---

[3] Mr. Charlebois states in his V.R.C.P. 56(c) undisputed facts that the driver of the tractor-trailer was present while he was towing. From this, he suggests that the presence of the driver and some of his towing suggestions means that the owner kept some modicum of control and possession over the vehicle. This inference is not supported by the remaining facts which show that Mr. Charlebois directed and conducted his towing. Mere presence of the owner or his agent is not enough to dispute control where the object is the necessary focus of the insured's work. See Cassion Corp., 502 A.2d at 1170–71 (notwithstanding owner's operation, insured's control over the project brought the vehicle under insured's "care custody or control").

caused by, Mr. Charlebois's vehicles, it excludes damages that arise out of his work.  That is simply outside the scope of the policy.

Moreover, this analysis is supported by another Vermont Supreme Court case dealing with a similar insurance provision that was issued the same year as <u>Fish</u>.  <u>Mallory v. Vt. Mut. Fire Ins. Co.</u>, 126 Vt. 237, 239–40 (1967) (interpreting an "in charge of the insured" exclusion to apply to insured's activity).  In <u>Mallory</u>, the plaintiff, an insured on his family's automobile policy, wrecked a car that he was test driving from the dealership.  <u>Mallory</u>, 126 Vt. at 238.  He sought indemnification and defense costs from the policy, but the insurers refused on the basis that the car was not covered under a provision that excluded "property rented to or in charge of the insured" from insurer's obligations.  <u>Id</u>. at 239.  Plaintiff argued that the car was not truly under his control because he did not own the vehicle and was severely limited on his use of the car.  <u>Id</u>.  The Court did not find this argument compelling and noted that for all intents and purposes that Plaintiff was in charge because he had possession of the car and was operating it at the time of the accident.  <u>Id</u>.  The Court held that the exclusion applied, and Insurer was under no duty to indemnify or defend.  <u>Id</u>. at 240.

In <u>Mallory</u> and <u>Fish</u>, the Court looked, albeit somewhat implicitly, to the nature of the control that each plaintiff exercised over the respective vehicle and trailer.  In <u>Mallory</u>, the Court discounted Plaintiff's argument that he lacked complete control over the vehicle because it was temporary.  <u>Id.</u>  Instead, it looked to the nature of his physical possession of the vehicle and the purpose of his control (to drive the car).  Like <u>Fish</u>, the plaintiff's control, never mind how temporary it might be, was critical.  To this extent,

these cases fit in with the majority of other jurisdictions applying the relationship test and illustrate its acceptance in Vermont jurisprudence.

The Mallory case also raises a final, relevant question about the nature of Mr. Charlebois's possession. In Mallory, the issue of control was resolved in part because the plaintiff had physical control of the vehicle. Most jurisdictions applying a relationship test break the analysis into two questions: 1) possession and 2) necessary v. incidental relationship. Cassion Corp., 502 N.E.2d at 1169. Here, there is no serious question that Mr. Charlebois was in possession of the tractor-trailer at the time of the towing. While he was not "operating" the tractor-trailer, he had full permission to move it and use it in any manner that would facilitate his work. Moreover, through his towing, he had sole physical possession of the truck. See 9 Russ & Segalla, supra, at § 126.22 ("The great majority of cases support the view that property in the care, custody, or control of the insured refers to possessory handling of the property as distinguished from proprietary control."). Thus, the question of possession is not disputable.

Apart from this distinction, Mr. Charlebois has not challenged this possessory element of control by arguing that it must be exclusive, proprietary, or another definition such as those more closely tied to cases involving real estate. 8 A.L.R.4th 563, at § 4[a]. The facts of this case distinguish the level of control required here from such cases as well as the meaning of possession in the context of bailments. Id. at § 4[b] (bailments) & [c] (real estate); see also Elcar Mobile Home, Inc. v D. K. Baxter, Inc., 169 A.2d 509, 516–17 (N.J. Sup. 1961) (proposing a separate test for "control" within the context of real estate). As such, the court concludes that Mr. Charlebois exercised sufficient physical possession of the vehicle to satisfy the possession requirement of both Mallory and the relationship

test.  While his possession was not proprietary or complete, it was extensive and within its scope absolute.

Coupled together with the previous necessary analysis, the inescapable conclusion is that the tractor-trailer was a property under the "care, custody or control" of Mr. Charlebois at the time of the accident. Therefore, the exclusion in Mr. Charlebois's policy under section B.6. applies to damages sustained by the tractor-trailer owner as a result of the towing accident.  Insurer is not obligated as a matter of law to provide either defense or indemnity for these claims.

Based on the foregoing, Plaintiff Charlebois's motion for summary judgment is Denied.  Defendant Insurer's motion for summary judgment is Granted.  Case is dismissed.

Dated at Burlington, Vermont_____, 2005.


_____

Richard W. Norton, Judge