NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 16

No. 2019-115

| | |
|---|---|
| Cindy Brillman | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| New England Guaranty Insurance Company, Inc. | September Term, 2019 |

Robert P. Gerety, Jr., J.

Robert P. McClallen of McClallen & Associates, P.C., Rutland, for Plaintiff-Appellee.

John E. Brady of Brady/Donahue, Springfield, for Defendant-Appellant.

Doreen F. Connor of Primmer Piper Eggleston & Cramer, PC, Manchester, New Hampshire, for Amici Curiae American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.), Specially Assigned

¶ 1. **ROBINSON, J.** At issue in this interlocutory appeal is the meaning of "date of loss" for the purpose of an insurance policy's condition that any action be commenced within one year after the "date of loss." The trial court concluded that the insurance provision requiring that an action be brought "within one year after the date of loss" was ambiguous and must be interpreted against insurer to mean that the one-year period began to run when insurer breached its obligations, i.e., at the time homeowner received final, allegedly insufficient, payment from insurer. The court accordingly denied insurer summary judgment and granted partial summary judgment to

homeowner. We conclude that the provision is unambiguous in requiring suit to be brought within one year of the date of the occurrence giving rise to coverage and reverse the partial summary judgment for homeowner. Because the only issue certified for interlocutory review was the interpretation of the contract, and given that homeowner has raised a colorable claim that insurer waived the contractual requirement, we remand for further proceedings.

¶ 2. The following facts were undisputed for purposes of summary judgment. At all relevant times plaintiff (homeowner) was covered by a homeowner's insurance contract issued by New England Guaranty Insurance Company (insurer). The policy included the following language: "Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." "Date of loss" is not defined in the insurance contract.

¶ 3. Homeowner alleged that on January 18, 2010, her property was damaged by water in an occurrence covered under the insurance policy. She reported the incident and insurer began investigating the loss. The parties disagreed about the value of the claim and insurer's obligations and communicated about the claim over the course of several years. Following its adjuster's "Fifth and Final Supplement Report," insurer made its final payment on February 16, 2017. After insurer did not act on homeowner's subsequent request for an appraisal, homeowner filed suit against insurer on February 12, 2018, alleging breach of contract and bad faith.

¶ 4. Insurer moved for summary judgment, arguing that homeowner failed to file suit within the one-year limitation period provided in the contract, which insurer construed as running from the date of the occurrence giving rise to coverage. Homeowner opposed summary judgment and filed a motion for partial summary judgment on the issue of whether her suit was timely filed, arguing that the term "date of loss" in the insurance contract was ambiguous and therefore should be construed against insurer to mean the date insurer breached its agreement under the insurance

2

contract.  Homeowner also asserted that by continuing to engage in negotiations with her, insurer had waived any defense that the contractual period for filing suit had expired.

¶ 5.      The trial court concluded that the undefined term "date of loss" was ambiguous in the context of this insurance policy.  It explained that the language could reasonably be construed to mean either the date of the covered damage to homeowner's home or the date that insurer breached the insurance contract by failing to perform under the contract.  Consequently, the court construed the contract in favor of homeowner, concluding that the words "date of loss" meant the date of insurer's last act in performance of its obligations under the contract.  Concluding that insurer's last act was delivery of the final payment on February 16, 2017, the court concluded that homeowner's February 12, 2018 suit was timely under the contract.  The court accordingly granted partial summary judgment to homeowner.  The trial court granted insurer's request for permission to bring an interlocutory appeal on the contract-interpretation question.

¶ 6.      On appeal from a summary-judgment order, "we apply the same standard as the trial court.  We will affirm summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82; see V.R.C.P. 56(a).

¶ 7.      Vermont law provides that suit-limitation provisions requiring that an action be commenced within one year of the date of the covered occurrence are generally enforceable in connection with actions on the insurance contract itself, and may apply to bad-faith claims to the extent those claims are essentially breach-of-contract claims presented as a tort.  In this case, we conclude that the limitation provision unambiguously bars actions on the contract commenced later than one year from the date of the covered occurrence.  Common law and regulatory provisions providing that insurers may be deemed to have waived the suit-limitation provision mitigate the potentially incongruous or unfair consequences of the suit-limitation provision.

## I. Vermont Law Concerning Suit-Limitation Provisions

¶ 8.     Pursuant to our existing caselaw, an insurance contract may establish a one-year limitation for filing suit on the contract notwithstanding the applicable statute of limitations if the limitation is unambiguous and reasonable.  The limitation may likewise apply to some, but not all, suits for bad faith.

¶ 9.     Generally, insurance contracts may contain provisions shortening the period for filing suit if the shorter period is consistent with any applicable statute, is reasonable, is clear and unambiguous, and provides "adequate notice of the reduction."  16 S. Plitt, et al., Couch on Insurance § 235:4 (3d ed. 2019) (explaining that under most authority "parties to an insurance contract have a right to contract for limitation periods shorter than the general statute of limitations"); see also Hebert v. Jarvis & Rice & White Ins., 134 Vt. 472, 475, 365 A.2d 271, 273 (1976) ("It is well established that a condition in an insurance policy providing that no recovery may be had thereon unless suit is initiated in a given time is valid unless the time can be said to be unreasonable.").

¶ 10.     Here, under either party's interpretation, the provision is consistent with the applicable Vermont statute, which allows insurance policies to contain a condition limiting the time to commence suit as long as the time period is not "less than 12 months from the occurrence of the loss, death, accident, or default."  8 V.S.A. § 3663.  The issue is whether this particular provision is clear and unambiguous.

¶ 11.     Applying these principles, we have upheld such contractual limitations periods.  In Gilman v. Maine Fire Ins. Co., 2003 VT 55, 175 Vt. 554, 830 A.2d 71 (mem.), the homeowners sued the homeowners' insurer on the policy, and for breach of the covenant of good faith and fair dealing.  The insurer moved to dismiss on the ground that the homeowners filed suit beyond the period allowed by the insurance contract, which stated that any suit had to be filed " 'within one year after the date of loss.' "  Id. ¶ 8.  This Court enforced the contract limitation provision.  Id.

4

¶ 9. We declined to decide whether the "date of loss" meant the date of the covered occurrence or the date the insurer allegedly breached the duty of good faith because the homeowners filed suit more than thirty-four months after the date of loss and over two years after the insurer made its final payment, making the claim untimely on either theory. Id. ¶ 10. We also recognized the homeowners' claim that insurer had waived the one-year limitation by continuing negotiations beyond that period and failing to provide the homeowners with the notice required by regulation, but concluded that the homeowners did not raise enough facts to support their contention. Id.

¶ 12. The next year, we considered a similar issue in Greene v. Stevens Gas Service, 2004 VT 67, 177 Vt. 90, 858 A.2d 238. In that case, the covered damage occurred in December 1995; the claims representative for the homeowner's insurer and the insured communicated over a period of time; the insured's last outreach to the claims representative was in March 1997; and the insured filed suit in December 2001. The Court recognized that the contractual provision requiring the insured to bring suit "within two years after the loss" was enforceable with respect to the claim on the policy, id. ¶¶ 18, 22. We also acknowledged that whether the limitation could also apply to the bad-faith claim was a more difficult question, and because applicability may arise on remand in this case, we review that analysis here. We began with the applicable statute, which provides:

> A policy . . . shall not contain a condition or clause limiting the time of commencement of an action on such policy or contract to a period less than twelve months from the occurrence of the loss, death, accident or default . . . . Any such conditions or clauses shall be null and void.

8 V.S.A. § 3663.

¶ 13. Noting that the Legislature restricted suit-limitation clauses, rather than expressly authorizing them, we concluded that the statute authorized contractual limitations only with respect to actions "on [the] policy or contract." Greene, 2004 VT 67, ¶ 18. We stated that this narrowing

was consistent with the developing law around the country on the proper use of suit limitation clauses. Id. ¶ 21.

¶ 14.    In determining whether the bad-faith claim in that case was a suit on the policy subject to the contractual limitation, we adopted a functional test. We first noted and rejected the bright-line positions at either extreme taken by courts in some other jurisdictions—that bad-faith claims are collateral to the policy and never subject to a policy limitation clause, and that the nexus between an action on the policy and a bad-faith claim is so strong that a claim for bad faith failure to pay is always subject to a policy limitation clause. Id. ¶ 26. Instead, we adopted the Iowa Supreme Court's position that "determining whether a tort action is 'on the policy' requires a case-by-case analysis of the nature of the tort claim, the timing of the relevant events, and the type of damages requested." Id. (citing Stahl v. Preston Mut. Ins. Ass'n, 517 N.W.2d 201, 203-04 (Iowa 1994)). We cited with approval the Iowa court's examples of bad-faith claims that may not be "on the policy," such as claims based on fraud and negligence during policy purchase negotiations or claims based on insurer's conduct with respect to repair of previously damaged property. Id. On the other hand, we agreed that bad-faith claims that rest on the denial of benefits alone are claims "on the policy." Id. We embraced the summary of Stahl and other like cases in the Couch on Insurance treatise:

> For purposes of determining whether actions against the insurer are collateral, such that suit limitation clauses do not apply, an action is collateral if the elements of a tort are satisfied in a manner distinct from breach of contract, but if the action is nothing more than a breach of contract claim "disguised" as a tort, the action is not collateral and the policy's suit limitation clause applies.

Id. ¶ 27 (quoting 16 Couch on Insurance 3d § 235:100 (3rd ed. 2000)).

¶ 15.    In Greene, the Court concluded that the bad-faith claim was indistinguishable from the breach-of-contract claim and was accordingly subject to the policy limitation clause. Id. ¶ 28. Because there was insufficient evidence of any activity within two years of the date the insured

6

filed suit, this Court rejected the insured's waiver argument, id. ¶ 29, and did not expressly analyze whether "date of loss" referred to the date of the covered event or the date of the insurer's breach.

¶ 16. These cases establish the framework for applying contractual limitations clauses, but none have addressed the central question in this appeal—whether the contractual limitations period in this insurance policy, requiring that a suit be filed within twelve months from the "date of loss," is ambiguous and can reasonably be construed to mean that the period is measured from the date that the insurer finally denies coverage.

## II. Construction of "Date of Loss"

¶ 17. The suit-limitation phrase in this contract states: "Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." The insurance policy does not define "date of loss" or "loss" in its definition section.

¶ 18. Insurer contends that the phrase "date of loss" unambiguously means the date of the occurrence giving rise to the insurance coverage. Homeowner argues that the meaning of "date of loss" is not clear because the policy defines "occurrence" rather than loss as the event giving rise to coverage and the relevant statute also refers to occurrence. See 8 V.S.A. § 3663 (providing that insurance contracts can include suit-limitation clauses if they provide at least twelve months to bring suit "from the occurrence of the loss, death, accident, or default"). Homeowner contends that the phrase "date of loss" is therefore ambiguous and should be construed against insurer as referring to the date the cause of action accrued, not when the damage occurred.

¶ 19. The proper construction of language in an insurance contract is a "matter of law" that this Court reviews without deference. Waters v. Concord Grp. Ins., 169 Vt. 534, 535, 725 A.2d 923, 925 (1999) (mem.). Provisions in an insurance policy must "be read together and viewed as an integrated whole." Id. at 536, 725 A.2d at 926. We construe terms in an insurance policy "according to their plain, ordinary, and popular meaning." Hardwick Recycling & Salvage, Inc.,

7

2004 VT 124, ¶ 23. "Because a policy is prepared by the insurer with little effective input from the insured, we construe insurance policies in favor of the insured, in accordance with the insured's reasonable expectations for coverage based on the policy language." Id. "Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." Whitney v. Vt. Mut. Ins., 2015 VT 140, ¶ 16, 201 Vt. 29, 135 A.3d 272. Any ambiguity in the policy's terms is resolved against the insurer. Id. However, the parties' expectations cannot control over unambiguous language and we will not rewrite unambiguous terms in a policy "to grant one party a better bargain than the one it made." Id. (quotation omitted).

¶ 20. We conclude that the phrase "date of loss" as used in this policy unambiguously means the date of the occurrence giving rise to coverage. This understanding conforms with the plain language of the policy, is reinforced by an analysis of the policy as a whole, and is consistent with a majority of the courts that have considered the question.

¶ 21. In the context of this policy, the term "loss" plainly refers to the covered loss for which insurer is liable to homeowner. See, e.g., Loss, Black's Law Dictionary (11th ed. 2019) (defining "loss" in context of insurance as "amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable").

¶ 22. The other policy provisions in the contract using the term "loss" reinforce this interpretation. In each instance, the term "loss" is used to mean the event causing damage for which the homeowner seeks coverage. For example, the policy states that it "insures against risk of direct loss to property." It excludes "loss" involving or caused by a host of specified perils. The policy also lists a homeowner's "Duties After Loss," which include notifying insurer of the loss to covered property. By its terms, the policy expressly applies only to "loss" that occurs during the policy period. Even the definition section, upon which homeowner relies, supports this construction. Although "date of loss" is not defined in the policy, the policy defines occurrence as an accident which results in "bodily injury" or "property damage." Property damage is in turn

8

defined as "physical injury to, destruction of, or loss of use of tangible property." At no point is loss used to refer to the date coverage is denied or final payment is made. It would strain the plain language of the policy and create confusion to interpret "loss" as meaning the date on which coverage is denied or the date on which the cause of action accrues in all or some of these instances. We accordingly conclude that loss as used in the suit-limitation provision unambiguously refers to the occurrence giving rise to coverage.

¶ 23. A majority of other courts that have considered the question agree that suit-limitation provisions using the term "loss" unambiguously refer to the event causing damage. See, e.g., Zuckerman v. Transamerica Ins. Co., 650 P.2d 441, 447 (Ariz. 1982) (en banc) (concluding that insurance provision limiting filing of suit to twelve months after "inception of the loss" unambiguously began to run at time when damage resulting in loss occurred); Bowen v. Buchanan Cty. Mut. Ins. Co., 834 S.W.2d 203, 206 (Mo. Ct. App. 1992) (concluding that insurance provision requiring suit to be "commenced within twelve (12) months next after the loss" was "clear and unambiguous" in referring to time damage occurred); Riteway Builders, Inc. v. First Nat'l Ins. Co. of Am., 126 N.W.2d 24, 26 (Wis. 1964) (holding that suit-limitation phrase requiring suit to be commenced within twelve months "after inception of the loss" meant twelve months from date damaged suffered); 17 Plitt, supra, § 236:22 (explaining that in construing limitations periods that run from date of loss "courts have generally adopted the plain meaning of the terms as the date of the loss or damage, or the date of the catastrophe insured against, as opposed to . . . the date when proof of loss was rejected or the claim denied, or when the claim becomes due and the cause of action accrues" (footnotes omitted)).

### III. Waiver and Estoppel

¶ 24. We recognize that suit limitations like the one in this case can lead to incongruous or unfair results. In a case where an insurer and a homeowner are engaged in ongoing negotiations, the suit limitation on its own would require a homeowner to file suit for breach of the insurance

9

contract before the insurer has actually breached by finally declining to pay all sums due under the policy. A homeowner may assume based on the insurer's conduct that the homeowner can file suit if and when ongoing negotiations fail to yield agreement. These considerations have led some courts to conclude that the suit limitation is triggered by the insurer's denial rather than the actual date of loss. See, e.g., Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc., 514 P.2d 223, 227 (Alaska 1973) (holding that insurance policy requiring claim to be commenced within twelve months next after inception of loss could not mean date of fire since this would give insurer unfair advantage over insured and meant instead date on which insurer denied coverage). Other courts have applied tolling principles to the contractual limitation period. See, e.g., Peloso v. Hartford Fire Ins. Co., 267 A.2d 498, 499 (N.J. 1970) (concluding that contractual limitation ran from date of casualty but was tolled from "time an insured gives notice until liability is formally declined").

¶ 25. We conclude that the doctrines of waiver and estoppel can mitigate the harsh results of enforcing these unambiguous and lawful provisions. As the Sixth Circuit has explained, "If conduct or inaction on the part of the insurer is responsible for the insured's failure to comply with time limitations, injustice is avoided and adequate relief assured, without doing violence to the plain language of the insurance contract, by resort to traditional principles of waiver and estoppel." Fed. Deposit Ins. Co. v. Hartford Accident & Indem. Co., 97 F.3d 1148, 1150 (8th Cir. 1996); see also 16 Plitt, supra, § 235:7 ("Although policy clauses limiting time in which actions may be brought against insurer are enforceable, such clauses are not favored by sound public policy, and therefore, are strictly construed against the invoking party, and are easily waived." (footnotes omitted)). Vermont's insurance regulations specifically require an insurer engaged in ongoing negotiations with an insured to give notice of impending statutory and contractual deadlines. See Fair Claims Practices § 6(E), Code of Vt. Rules 21 020 008 (providing that insurers must not continue negotiations for settlement of claim with unrepresented claimant without giving first-

10

party claimants thirty days' notice and third-party claimants sixty days' notice that statutory or contractual time limit may be expiring and may affect claimant's rights).*

¶ 26.   In this case, homeowner raised the issue of waiver in response to insurer's motion for summary judgment.  In contrast to the homeowners in Gilman and Greene, homeowner has proffered evidence of ongoing negotiations with insurer within the contractual limitation period. The trial court did not address the waiver issue because it concluded that homeowner filed suit within the contractual limitation period.  We conclude that, absent a valid defense, the contractual limitation on its face would bar homeowner's claim for breach of the insurance contract.  We accordingly reverse the partial summary judgment order entered in homeowner's favor.  On remand the trial court should address homeowner's waiver argument, and, if necessary, should apply the principles set forth above to determine whether homeowner's bad-faith claims constitute claims "on the policy."

The court's order granting partial summary judgment to homeowner is reversed.  The matter is remanded for further proceedings consistent with this decision.

FOR THE COURT:

_____

Associate Justice

---

* We have not decided whether failure to comply with this regulation constitutes a waiver of a contractual limitation.  In both Gilman, 2003 VT 55, ¶ 10, and Greene, 2004 VT 67, ¶ 29, we rejected the homeowners' arguments that the insurer waived the contractual limitation by violating this regulatory requirement on the basis that the homeowners had not proffered sufficient evidence of ongoing negotiations to support the argument.