NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 76

No. 2019-333

| | |
|---|---|
| Progressive Northern Insurance Company | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Todd Muller and Melissa Muller | January Term, 2020 |

Mary Miles Teachout, J.

Daniel L. Burchard of McCormick, Fitzpatrick, Kasper & Burchard, P.C., Burlington, for
 Plaintiff-Appellee.

Joel P. Iannuzzi of Cleary Shahi & Aicher, P.C., Rutland, for Defendants-Appellants.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.      **CARROLL, J.**   Todd and Melissa Muller appeal from a superior court decision granting summary judgment to their insurer, Progressive Northern Insurance Company. The Mullers take issue with the court's conclusions as to how the setoff provision of their insurance policy should be applied when there are multiple claimants. We agree with the trial court that, construing the insurance policy as a whole, the setoff provision is unambiguous: It clearly provides that Progressive is entitled to reduce "all sums . . . paid" regardless of the number of claims made. We affirm.

¶ 2.      The parties stipulated to the following material facts. Todd and Melissa Muller are the named insureds under two Progressive insurance policies: a primary motorcycle insurance

policy and an excess automobile policy. Both policies have a combined single limit for "Uninsured/Underinsured Motorist Bodily Injury." The combined single limit is the most Progressive will pay regardless of the number of claims made, insured persons, lawsuits brought, or vehicles involved in an accident. The primary policy has a combined single limit of $300,000, and the excess policy has a combined single limit of $500,000. As the names suggest, the primary policy provides the primary layer of underinsured motorist coverage and the excess policy affords an excess layer of underinsured coverage if injuries exceed the primary policy's limit.

¶ 3. In June 2017, the Mullers, while riding together on a motorcycle, were seriously injured in a collision with a car insured by GEICO. Because the other driver was at fault, the Mullers each received $100,000 payments from GEICO. The Mullers then sought underinsured motorist coverage from Progressive.

¶ 4. Progressive determined that under the primary policy, the Mullers were entitled to $100,000 of underinsured motorist coverage for bodily injury. Progressive reasoned that the setoff provision in the primary policy allowed it to reduce its underinsured-motorist liability "by all sums . . . paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible." (Emphasis omitted.) Pursuant to this setoff provision, Progressive determined it could aggregate the $100,000 payments each of the Mullers received from GEICO and reduce its underinsured-motorist liability by $200,000, leaving $100,000 of primary coverage. Progressive paid out the full $500,000 of coverage under the excess policy.

¶ 5. Progressive then instituted a declaratory-judgment action to clarify its obligations to the Mullers under the primary policy. Before the trial court, the Mullers argued that the setoff provision is ambiguous because it does not expressly outline how the setoff applies when there are multiple claimants under the policy. They argued that the setoff provision could be reasonably interpreted to apply either separately against each claimant—leaving $200,000 of coverage—or, as Progressive argued, cumulatively against the total amount paid by the tortfeasor's insurance,

2

leaving $100,000 of coverage. Because any ambiguity is construed against the insurer, the Mullers argued they were entitled to separate setoffs.

¶ 6. The trial court disagreed. It concluded that the setoff provision clearly provided for aggregate setoffs. The setoff provision, the trial court explained, allowed Progressive to reduce its underinsured-motorist liability by "all sums . . . paid because of bodily injury" and "nothing else in the policy renders 'all sums' confusing or ambiguous." All sums, in this case, included both $100,000 payments from GEICO, resulting in a total setoff of $200,000 and a payment of $100,000 from the primary insurance policy. The court accordingly granted summary judgment to Progressive. The Mullers timely appealed.

¶ 7. The only issue on appeal is whether the setoff provision is ambiguous with regard to how setoffs should be applied when there are multiple claimants. The Mullers argue that the setoff provision is ambiguous because it fails to specify how to apply setoffs when there are multiple underinsured motorist claims under a single insurance policy. Because this is an issue of first impression in Vermont, the Mullers point to Ohio case law, which they argue establishes two clear principles: "(1) setoffs on a single limit [underinsured motorist] policy must be applied separately and successively to each claimant; and, (2) [a] setoff provision that fails to adequately set forth the manner in which setoffs are to be applied when multiple claimants make claims under a single limit [underinsured motorist] policy [is] inherently ambiguous." (Emphasis omitted.) Furthermore, the Mullers argue that Progressive could have resolved the ambiguity by adding a simple statement in the offset provision which specified "that in the event that there were multiple [underinsured motorist] claimants, setoffs against the [underinsured motorist] policy limits would be cumulative."

¶ 8. In response, Progressive argues that the setoff provision is not ambiguous because it "states a simple and straightforward rule that broadly calls for the policy's [underinsured motorist] limit to be reduced in the same manner in all [underinsured motorist] situations."

3

(Emphasis omitted.) The Ohio case law cited by the Mullers, Progressive asserts, is not relevant because Ohio adopted a principle of separate and successive setoffs for public policy reasons that have no application in Vermont.

¶ 9. We review summary-judgment decisions de novo. In re Morrisville Hydroelectric Project Water Quality, 2019 VT 84, ¶ 58, ___ Vt. ___, 224 A.3d 473. The trial court's decision will be affirmed "when there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Nolan v. Fishman, 2019 VT 63, ¶ 11, ___ Vt. ___, 218 A.3d 1034 (quotation omitted).

¶ 10. Here, there are no disputed facts. Instead, the parties dispute the proper interpretation of the setoff provision. The Mullers argue they are entitled to separate and successive setoffs because the setoff provision is ambiguous. We conclude, however, that the setoff provision is not ambiguous.

¶ 11. "Because an insurance policy is a contract, its interpretation is a question of law, and our review is nondeferential and plenary." Commercial Constr. Endeavors, Inc. v. Ohio Sec. Ins. Co., 2019 VT 88, ¶ 9, ___ Vt. ___, 225 A.3d 247. "Proper insurance contract interpretation requires that the policy provisions be read together and viewed as an integrated whole." Id. ¶ 10 (quotation omitted). Disputed terms must be accorded "their plain, ordinary, and popular meaning." Brillman v. New England Guar. Ins. Co., Inc., 2020 VT 16, ¶ 19, ___ Vt. __, 228 A.3d 636 (quotation omitted). "Because a policy is prepared by the insurer with little effective input from the insured, we construe insurance policies in favor of the insured, in accordance with the insured's reasonable expectations for coverage based on the policy language." Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 2004 VT 124, ¶ 23, 177 Vt. 421, 869 A.2d 82. In other words, ambiguity is construed against the insurer. Brillman, 2020 VT 16, ¶ 19. "Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." Id. (quotation omitted). If an insurance contract is not ambiguous,

4

however, we will enforce it according to its terms and will not rewrite it simply because "it happens to benefit an insurer." See Parker's Classic Auto Works, Ltd. v. Nationwide Mut. Ins. Co., 2019 VT 46, ¶ 7, ___ Vt. ___, 215 A.3d 1084.

¶ 12. The Mullers' primary policy begins with an insuring agreement, which explains that in return for paying premiums, Progressive agrees to insure "subject to all the terms, conditions, and limitations of th[e] policy." The insuring agreement further explains that the insurance "policy consists of the policy contract, [the] insurance application, the declarations page, and all endorsements to th[e] policy." (Emphasis omitted.) The policy contract contains a general definitions sections, which provides that the "[d]eclarations page" outlines "coverages, limits of liability, covered motorcycles, premium, and other policy-related information." (Emphasis omitted.)

¶ 13. The declarations page, in turn, provides that the Mullers' policy has a combined single liability limit of $300,000 for "Uninsured/Underinsured Motorist Bodily Injury." Part III of the policy contract, entitled uninsured/underinsured motorist coverage, contains a limits-of-liability section that further details the scope of uninsured/underinsured-motorist coverage. This section explains that when a combined single-liability limit applies, "the amount shown [on the declarations page] is the most [Progressive] will pay for the total of all bodily injury damages resulting from any one accident." (Emphasis omitted.) On the same page, the contract reiterates that the liability limit is the most Progressive will pay "regardless of the number of":

> 1. claims made;
> 2. covered motorcycles;
> 3. insured persons;
> 4. lawsuits brought;
> 5. vehicles involved in the accident; or
> 6. premiums paid.

(Emphasis omitted.) The setoff provision, also located on the same page, provides:

> The limits of liability for bodily injury under this Part III will be
> reduced by all sums:

5

    1. paid because of bodily injury by or on behalf of any persons or
    organizations that may be legally responsible. . . .

(Emphasis omitted and added.)

¶ 14. It is true, as the Mullers point out, that the setoff provision itself does not expressly describe how to apply setoffs when there are multiple underinsured motorist claims. However, the insurance policy as a whole—especially the limits-of-liability section in Part III—makes clear that the setoff provision allows Progressive to reduce "all sums . . . paid" regardless of the number of claims made. Part III is clear that the combined single liability limit applies the same "regardless of the number of" claims made or insured persons. Accordingly, when Progressive determines its underinsured motorist liability for bodily injury, it is irrelevant that there are multiple insureds under the policy. In other words, Part III establishes that in calculating underinsured motorist liability, the Mullers are treated aggregately, not separately, under the policy.

¶ 15. The setoff provision is not only located in the limits-of-liability section in Part III, but also expressly provides that Progressive can reduce "all sums . . . paid" from the "limits of liability" in Part III. By its plain language, the setoff provision entitles Progressive to reduce "all sums . . . paid" from the liability limits in Part III, and the liability limits apply the same regardless of the numbers of claims made. When Part III is construed together as a whole, the only reasonable reading of the setoff provision is that it entitles Progressive to reduce "all sums . . . paid" regardless of the number of claims made. Nothing in the policy suggests the setoff provision applies separately against each claimant simply because there are two named insureds.

¶ 16. Several courts have also concluded that almost identical setoff provisions were unambiguous in the context of multiple claimants seeking underinsured motorist coverage under the same policy. See, e.g., <u>Medley v. Am. Econ. Ins. Co.</u>, 654 N.E.2d 313, 316 (Ind. Ct. App. 1995) (holding that similar insurance policy was "clear and unambiguous" because it "set[] forth the maximum limit of liability for the 'per accident' limit for underinsured motorist coverage . . .

6

regardless of the number of insureds or claims made"); <u>Mutual of Enumclaw Ins. Co. v. Key</u>, 883 P.2d 875, 876 (Or. Ct. App. 1994) (holding that similar insurance policy "unequivocally limit[ed] [the insured's] liability to the single-limit coverage, less all sums received from the tortfeasor[]").

¶ 17.   Contrary to the Mullers' representation, Ohio case law does not suggest that the setoff provision in the primary policy is ambiguous with regard to how setoffs should be applied when there are multiple claimants under a single insurance policy.  The Ohio cases cited by the Mullers applied separate and successive setoffs based on public policy considerations.  See, e.g., <u>Derr v. Westfield Cos.</u>, 589 N.E.2d 1278, 1280 (Ohio 1992) (applying separate and successive setoffs because "Ohio statutory law" specified that each person pursuing a wrongful-death claim "has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision" (quotation omitted)); <u>Zelko v. Parsons</u>, 505 N.E.2d 271, 274-75 (Ohio Ct. App. 1985) (applying separate and successive setoffs to avoid "a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist" (quotation and emphasis omitted)).  The public policy considerations that led Ohio courts to apply separate and successive setoffs do not suggest that the plain language of the setoff provision in the Muller's primary insurance policy is ambiguous.

¶ 18.   In sum, in this case, the setoff provision is not ambiguous.  The various provisions of the policy make clear that Progressive is entitled to reduce "all sums . . . paid because of bodily injury" regardless of the number of claims made.  (Emphasis omitted.)

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

7