*Huntington Ingalls Industries, Inc, v. Ace American Insurance Co.*, 230-9-20 Frcv (Mello, J., July 30, 2021)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Franklin Unit | CIVIL DIVISION<br>Docket No. 230-9-20 Frcv |

| | |
|---|---|
| HUNTINGTON INGALLS INDUSTRIES, INC., and HUNTINGTON INGALLS INDUSTRIES RISK MANAGEMENT LLC,<br>Plaintiffs,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, et al.,<br>Defendants. | |

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFFS' CROSS-MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS, NOS. 1, 2, AND 3

Plaintiff Huntington Ingalls Industries, Inc. (hereinafter "HII") "is the country's largest military shipbuilding company and a provider of professional services to partners in government and industry." Complaint (filed September 14, 2020) at ¶ 1. In this suit, HII and its captive insurance subsidiary, Huntington Ingalls Industries Risk Management LLC (hereinafter "HIIRM"), ask the Court to declare that the "all risk" reinsurance contracts issued by the Defendants provide coverage for an array of expenses, losses, and business interruption HII has suffered because of the COVID-19 pandemic. *See* Complaint at ¶ 6.

Relying upon the express policy language, the Defendants have moved for judgment on the pleadings pursuant to V.R.C.P.12(c). Simultaneously, the Plaintiffs have filed three motions for partial judgment on the pleadings, each addressing the import of a particular exclusion found in one or more reinsurance contracts. In addition, each of Plaintiffs' motions is accompanied by a separate request that the Court take judicial notice of ostensibly dispositive facts. *See generally* Plaintiffs' Motion for Partial Judgment on the Pleadings No. 1: Physical Loss or Damage to Property (filed May 21, 2021); HIIRM's Motion for Partial Judgment on the Pleadings No. 2: Seepage-Pollution-Contamination Exclusion (filed May 21, 2021); HIIRM's Motion for Partial Judgment on the Pleadings No. 3: The Microorganism Exclusion (filed May 24, 2021).

On July 28, 2021, the Court entertained oral argument on these pending motions; all parties attended via WebEx video. Upon the Court's consideration of the parties' arguments and submissions, and for the reasons set forth below, the Defendants' Motion for Judgment on the Pleadings (filed May 21, 2021) is *granted,* and the Plaintiffs' three Cross Motions for Partial Judgment on the Pleadings, and accompanying motions requesting judicial notice, are *denied as moot.*

## I. Background

### A. Standard of Review

"A motion for judgment on the pleadings is designed to test the law of the claim, not the facts which support it." *Island Industrial, LLC v. Town of Grand Isle*, 2021 VT 49, ¶ 25, ___ A.3d ___ (citation and quotation marks omitted). "A defendant may not secure judgment on the pleadings if contained therein are allegations that, if proved, would permit recovery." *Id.* ¶ 10 (citation and quotation marks omitted).

A court's review of either a motion to dismiss or a motion for judgment on the pleadings applies similar standards. *Messier v. Bushman*, 2018 VT 93, ¶ 9, 208 Vt. 261.

> A motion to dismiss should not be granted unless there exist no facts or circumstances under which the nonmovant may be entitled to relief. … On a V.R.C.P. 12(c) motion for judgment on the pleadings, the issue is whether, once the pleadings are closed, the movant is entitled to judgment as a matter of law on the basis of the pleadings. … For the purposes of a motion for judgment on the pleadings, all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false. … A defendant may not secure judgment on the pleadings if contained therein are allegations that, if proved, would permit recovery.

*Id.* (citations and quotation marks omitted).

### B. The Property Policy

HII builds ships for the United States government at facilities in Virginia and Mississippi. HII's captive insurance subsidiary, HIIRM, issued a Global Property Insurance Policy to HII (hereinafter the "Property Policy") for the period of March 15, 2020 to March 15, 2021. Although there is a separate reinsurance

agreement between each Defendant and HIIRM, these various reinsurance policies incorporate the terms and conditions of the Property Policy. The Property Policy has a limit of liability of $1,500,000,000 per occurrence, subject to a $2,000,000 per occurrence deductible. *See* Complaint at ¶¶ 33, 45; Defendants' Motion at 4.

As is evident in the parties' submissions, and acknowledged during their July 28, 2021 oral argument, Defendants' motion requires the Court to discern: (1) the meaning the phrase "direct physical loss or damage to property," as that term is used in the Property Policy, and (2) under which circumstances, if any, the presence of the COVID-19 virus may constitute such "direct physical loss or damage to property."

In relevant part, the Property Policy provides:

**6. LOSS OR DAMAGE INSURED**

This Policy insures against all risks of *direct physical loss or damage to property* described herein occurring during the term of insurance including general average, salvage and all other charges on shipments insured hereunder, except as hereinafter excluded.

.                    .                    .

**8. COVERAGE**

This Policy insures the interest of the Insured in the following:

A.  REAL AND PERSONAL PROPERTY

All *real and personal property* while such property is located within the territorial limits of this Policy or while in due course of Transit which is owned, used, or acquired by the Insured, and property of others in the Insured's care, custody or control including the Insured's legal liability for such property including the costs to defend any allegations of liability for *physical loss or damage of the type insured by this Policy to such property*; including but not limited to the following: [Policy lists property]

.                    .                    .

B. BUSINESS INTERRUPTION – GROSS EARNINGS

1.  Loss due to the necessary interruption of business conducted by the Insured, whether total or partial including all interdependences between or among companies owned or operated by the Insured caused by *physical loss or damage insured herein during the term of this Policy*

*to real and/or personal property* described in Paragraph 8.A. and *including real and/or personal property* for which liability for loss thereto is assumed by the US government.

.　　　　.　　　　.

## C. EXTRA EXPENSE

1.　Any reasonable and necessary EXTRA EXPENSE incurred by the Insured in order to continue as nearly as practicable the normal operation of the Insured's business following *physical loss or damage insured herein during the term of this Policy to real and/or personal property as described in Paragraph 8.A. and including real and/or personal property* for which liability for loss there to is assumed by the US government.

.　　　　.　　　　.

## 9. EXTENSIONS OF COVERAGE

THIS CLAUSE EXTENDS THE COVERAGES DESCRIBED IN PARAGRAPHS 8.B., 8.C., 8.F., AND 8.G.

A.　This Policy, subject to all its provisions and without increasing the amount of said Policy limits, also insures loss resulting from or caused by *physical loss or damage* to the following:

1. CONTINGENT BUSINESS INTERRUPTION/CONTINGENT EXTRA EXPENSE: *Property of the type insured* at locations of direct or indirect suppliers of the Insured that prevents that supplier of goods and/or services to the Insured from rendering their goods and/or services, or property of the type insured at locations of direct or indirect customers of the Insured that prevents those customers of goods and/or services from the Insured from accepting the Insured's goods and/or services. …

B.　INTERRUPTION BY CIVIL OR MILITARY AUTHORITY

This Policy is extended to insure loss sustained when, as a *direct result of physical loss or damage* not excluded by this Policy to property of the type not excluded in this Policy occurring within 15 miles of the Insured's premises access to or from the Insured Location which is impaired by order of military or civil authority.

C.　INGRESS/EGRESS

4

> This Policy is extended to insure loss sustained when, as a *direct result of physical loss or damage* not excluded by this Policy to property of the type not excluded in this Policy, ingress to or egress from, occurring within 15 miles of an Insured Location which is impaired.

*See* Property Policy (appended both to Defendants' Motion and Plaintiffs' Cross-Motion No. 1 as Exhibit A) (emphasis added); *see also Kaplan v. Morgan Stanley & Company, Inc.* 2009 VT 78, ¶ 10 n.4, 186 Vt. 605 (mem.) (A court may consider a document referred to in the complaint when ruling on a motion to dismiss without converting that motion to one for summary judgment.).

Subject to further explication in their 33-page Complaint, the Plaintiffs summarize their harm as follows:

> Like thousands of other businesses across the country, HII has suffered, and continues to suffer, substantial financial losses as a result of SARS-CoV-2, COVID-19, the subsequent actions and orders of government authorities, the need to co[]mply with guidance from the Centers for Disease Control and Prevention ("CDC"), and the need to mitigate its losses and damage. Specifically, as a defense contractor, HII is deemed part of the country's "critical infrastructure" by the Department of Homeland Security. Therefore, while many businesses around the country have closed their doors, HII has, as required, continued its operations despite the certain presence of SARS-CoV-2 at its facilities. However, HII has suffered substantial delays in its operations due to, among other things, the need to modify and stagger work to reduce crowding and achieve social distancing, extensive sanitation and cleaning at its facilities to comply with CDC guidance and government orders, the daily unavailability of dozens of employees because of illness or CDC-required quarantine due to exposure to SARS-CoV-2, and numerous other precautions taken at the direction of government authorities and the CDC that affect the employees' ability to work. Although the disruption is not limited to HII's shipbuilding business, HII's shipbuilding businesses have been, and continue to be, particularly impacted. Because shipbuilding is a highly synchronized process, the delays that HII is suffering today are likely to have ripple effects for years.

Complaint at ¶ 2.

The Complaint sets forth the Plaintiffs' theory of relief most succinctly as follows:

> As a result of the Pandemic events, HII has sustained covered property damage and loss under the Property Policy. SARS-CoV-2 has been and is

5

present at many, if not all, HII facilities. Because SARS-CoV-2 can adhere to surfaces of property for several days and linger in the air in buildings for several hours, the presence of SARS-CoV-2 on or around property amounts to "direct physical loss or damage to property" as that phrase is used in the Property Policy and the Reinsurance Policies. In fact, given the manner in which SARS-CoV-2 reportedly lingers in the air and on surfaces and its manner of transmission, and the desire to "flatten the curve," HII's premises were and are not capable of performing their essential functions at their intended capacities. Accordingly, the presence of SARS-CoV-2 substantially impaired the essential functioning of HII's properties, constituting "direct physical loss or damage to property."

Complaint at ¶ 61.

Admittedly, then, the risk insured here, as outlined in ¶ 6 of the Property Policy and referenced in other policy excerpts, *supra*, is "direct physical loss or damage to property," a term otherwise undefined in the contracts. *See, e.g.,* Plaintiffs' Cross-Motion No. 1 at 3 ("The Reinsurers' policies provide coverage for 'all risks of direct physical loss or damage to property'."). The basis of the Plaintiffs' claim for coverage necessarily is that the pervasive presence of the COVID-19 virus in the air of its plants and on surfaces of the property located therein constitutes "direct physical loss or damage to property" as that term is commonly and reasonably understood. *See, e.g., Rainforest Chocolate, LLC v. Sentinel Insurance Company, LTD*, 2018 VT 140, ¶ 7, 209 Vt. 232 ("Vermont law requires that policy language be accorded its plain, ordinary meaning consistent with the reasonable expectations of the insured, and that terms that are ambiguous or unclear be construed broadly in favor of coverage." (citation and quotation marks omitted)).

## II. Discussion

### A. Defendants' Motion

The parties have agreed that "[t]his [Property] Policy and any and all rights or obligations of the Insured or Insurer shall be construed in accordance with the internal laws of the State of Vermont without regard to its conflict of laws principles." *See* Property Policy at 26. "[I]t is well settled that it would be contrary to the justified expectations of the parties for a court to interpret their agreement by the laws of any jurisdiction other than that specified in the contract." *See Stamp Tech, Inc. v. Lydall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 23, 186 Vt. 369.

Under Vermont law, a court interprets insurance policy provisions "according to their plain, ordinary and popular meaning." *See Brillman v. New England Guaranty Insurance Company, Inc.*, 2020 VT 16, ¶ 19, 211 Vt. 550 (citation and

quotation marks omitted). Because "direct physical loss or damage to property" is not a defined term in the Property Policy, resolution of this matter depends upon whether the plain, ordinary, popular, and reasonable meaning of this term supports the Plaintiffs' claim of coverage under this all-risk Property Policy. *See* Complaint at ¶ 34.

Whether a contract term is unambiguous, or reasonably and fairly susceptible to more than one interpretation, is a matter of law for the Court to decide. *Isbrandtsen v. North Branch Corporation*, 150 Vt. 575, 577, 556 A.2d 81 (1988). "A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation." *Id.* Moreover, the fact that a provision is "inartfully worded or clumsily arranged" does not automatically render the language "ambiguous or fatally unclear." *Id.* at 580-81. As the Vermont Supreme Court has instructed:

> Because a policy is prepared by the insurer with little effective input from the insured, we construe insurance policies in favor of the insured, in accordance with the insured's reasonable expectations for coverage based on the policy language. … Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation. … Any ambiguity in the policy's terms is resolved against the insurer. … However, the parties' expectations cannot control over unambiguous language and we will not rewrite unambiguous terms in a policy to grant one party a better bargain than the one it made.

*Brillman*, 2020 VT 16, ¶ 19 (citations and quotation marks omitted). In short, a court "will not deprive the insurer of unambiguous terms placed in the contract for its benefit." *Shriner v. Amica Mutual Insurance Co.*, 2017 VT 23, ¶ 6, 204 Vt. 321 (citation and quotation marks omitted).

As a threshold observation, the Court notes that most courts which have considered the nature and extent of coverage under policies requiring physical loss or damage have concluded that "it is doubtful that the alleged physical presence of the COVID-19 virus on surfaces and in the air constitutes either 'direct physical loss of or damage to property' …" required to trigger coverage. *100 Orchard Street, LLC, v. The Travelers Indemnity Insurance Company of America*, 2021 WL 2333244, *1 (S.D.N.Y. 2021). "[W]hile the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself. … Thus, it is not surprising that most courts that have decided the issue have held that the physical presence of COVID-19 does not constitute property loss or damage within the meaning of insurance policies like the one here." *Id.* (citation and footnote omitted; emphasis in original); *cf. 44 Hummelstown Associates, LLC v. American Select Insurance Company*, 2021 WL 2312778, * 8 (M.D. Pa. 2021) (Where

7

coverage is triggered by direct physical loss or damage to property, the combination of governor's orders and virus presence is insufficient to trigger coverage for hotel's decreased patronage.).

The Vermont Supreme Court has not decided definitively how courts should interpret the term "direct physical loss or damage" in policies similar to the Property Policy. After examining Vermont law, the United States District Court for the District of Vermont recently followed the majority of courts requiring plaintiffs to allege physical damage or loss caused by COVID-19 as a prerequisite for coverage. *See Associates in Periodontics, PLC v. Cincinnati Insurance Co.*, 2021 WL 1976404 (D. Vt. 2021).

In *Associates in Periodontics*, Judge William K. Sessions III examined whether an "all risk" insurance policy covered losses a Vermont dental office suffered when it was forced to close during the COVID-19 pandemic. Framing the parties' "fundamental debate" as "whether the COVID-19 pandemic caused direct physical loss or damage as contemplated by the Policy," Judge Sessions observed:

> On the question of "physical damage" or "physical loss," most courts have held that the presence of the COVID-19 virus did not cause such damage or loss to covered property. … For example, cases out the United States District Court for the District of Massachusetts recently determined that the phrase "direct physical loss of or damage to" property require "some enduring impact to the actual integrity of the property at issue. In other words, the phrase 'direct physical loss of or damage to' does not encompass transient phenomena of no lasting effect…" … In *Select Hospital* [*LLC v. Strathmore Insurance Co.*, 2021 WL 1293407 (D. Mass. April 7, 2021) (appeal filed)], the court reasoned that "the COVID-19 virus does not impact the structural integrity of property … and thus cannot constitute 'direct physical loss of or damage to' property. A virus is incapable of damaging physical structures because 'the virus harms human beings, not property.'"

*Id.* at \*3 (citations omitted). Accordingly, Judge Sessions held that because COVID-19 did not cause physical damage or loss to the Plaintiff's property, there was no coverage for financial losses suffered during the pandemic. *Id.* at 8.

As noted by Judge Sessions, to date, most courts have concluded that neither the temporary presence of the COVID-19 virus, nor the business disruption caused by civil authority-ordered business disruption, is covered by policies which, as a prerequisite to coverage, require physical damage or loss to property. *See id.* at 6-8; *see also Town Kitchen, LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 768273, \* 5, ___ F.Supp.3d ___ (S.D. Fla. 2021) ("[T]the key difference between the Plaintiff's loss of use theory and something clearly covered—like a hurricane, is that the property did not change. The world around it did. … Plaintiff seeks to recover

8

from economic losses caused by something physical -- not physical losses."). Without doubt, and "[a]s with any insurance, property insurance coverage is 'triggered' by some threshold concept of injury to the insured property, … [and] this trigger is frequently 'physical loss or damage' …."  10A Couch on Insurance Third Edition *Generally; "Physical" loss or damage* § 148:46 (Westlaw June 2021 Update). However, as further explained in Couch on Insurance:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

> The opposite result has been reached, allowing coverage based on physical damage despite the lack of physical alteration of the property, on the *theory that the uninhabitability* of the property was due to the fact that gasoline vapors from adjacent property had infiltrated and saturated the insured building, and the theory that the threatened physical damage to the insured building from a covered peril essentially triggers the insured's obligation to mitigate the impending loss by undertaking some hardship and expense to safeguard the insured premises.

*Id.* (emphasis added; footnotes omitted).

In this Court's opinion, *Associates in Periodontics* is distinguishable in that the complaint before Judge Sessions appears to have no clear allegation of damage to property.  *See* 2021 WL 1976404, *1.  Moreover, the District Court's analysis pays short shrift to the additional theory, recognized in Couch on Insurance, that a phenomenon which causes property to be unsafe, unusable, or uninhabitable may trigger coverage under a policy which insures for direct physical loss or damage. *See id.* at *4 (concluding that "[m]ost courts have viewed those cases as outliers"). Lastly, the Court is convinced that the Vermont Supreme Court would find, under certain circumstances, that the presence of a contaminant like the COVID-19 virus is capable of causing "direct physical loss or damage to property" under an insurance policy such as the one at issue in this case.

In *American Protection Insurance Co. v. McMahan*, 151 Vt. 520, 562 A.2d 462 (1989), the Vermont Supreme Court recognized and applied uninhabitability theory to an insurance policy containing language similar to that in the Property Policy. There, the Supreme Court indicated that the presence of formaldehyde foam insulation in a house could constitute "property damage" for the purpose of a third-party liability coverage claim.  In that case, the policy defined "property damages" as "physical injury to or destruction of tangible property, including loss of use of this

9

property." *Id*. at 526. Although it expressed no view on the merits of the property damage claim, the Supreme Court opined:

> The Livaks' claim essentially is that the presence of toxic material in the walls of their house constitutes "destruction of tangible property." They claim to have lost much of the beneficial use of the property—they can no longer live there without injury, and the property's resale value is diminished. If the Livkas can prove that the insulation damaged the house, it follows that consequential damages as allowed by law are covered by the policy.

*Id*. (footnote omitted).

Recently, where COVID-19's alleged presence on the premises forced a fitness center to close, allegedly resulting in "direct physical loss or damage," Judge Terrence R. Nealon of the Court of Common Pleas of Pennsylvania undertook a comprehensive examination of current rulings and found the insured had stated a cognizable claim of coverage. *See Brown's Gym, Inc. v. The Cincinnati Insurance Company*, 2021 WL 3036545 (Pa. Com. Pl. July 13, 2021). Seemingly echoing the *McMahan* court, and outlining his conclusions, Judge Nealon explained:

> Prior to the COVID-19 pandemic, appellate and state courts in this Commonwealth established a "reasonable and realistic standard for identifying physical loss or damage" to property in cases "where sources unnoticeable to the naked eye" substantially reduced the use of the property, and held that an insured may satisfy the "direct physical loss or damage" requirement for insurance coverage if the infectious pathogen, disease-causing agent, or contaminant renders the property "useless or uninhabitable," or if the property's functionality is "nearly eliminated or destroyed" by that invisible source. Under this "physical contamination" theory, courts concluded that ammonia fumes, e-coli bacteria, carbon-monoxide, gas vapors, lead intrusion, and odor from cat urine or methamphetamine cooking, which made covered premises unusable, unsafe, or unfit for their intended use, constituted "physical loss or damage" for purposes of insurance coverage. In the wake of the coronavirus pandemic and the accompanying government closure orders, better reasoned decisions across the country have applied the "physical contamination" theory in recognizing the applicability of business interruption insurance coverage only if the insured asserts that (a) the COVID-19 virus was actually present on or attached to surfaces on the covered property, and (b) its presence caused the insured premises to become uninhabitable, unusable, inaccessible, or unduly dangerous to use.

*Id*. at *1.

10

Likewise, in *Kim-Chee LLC v. Philadelphia Indemnity Insurance Company*, 2021 WL 1600831, ___ F.Supp.3d ___ (W.D.N.Y. 2021), Judge Geoffrey W. Crawford examined the claims of business owners seeking coverage under "all-risk" policies for losses they sustained when their businesses were closed due to the COVID-19 pandemic. As is the case here, the matter before Judge Crawford required the court to determine whether a business closure due to COVID-19 constitutes a "direct physical loss of or damage to the insured property." *Id.* at *2. The court first recognized the traditional, majority-held premise that "[t]he presence of the COVID-19 virus in the air or on surfaces of a covered property does not qualify as damage to the property itself." *Id.*, at *4. However, the court further acknowledged that cases where property remains intact but is rendered unfit for use or occupancy, another understanding of "direct physical loss of or damage to property" has emerged:

> First … courts have consistently ruled that contamination by a persistent chemical or biological agent, not otherwise excluded from coverage, may cause a direct physical loss if it renders the insured property unusable. This principle applies even though the contamination may be gaseous, microscopic, or invisible. Covered losses are not confined to the obvious physical changes to a building caused by fire or bad weather.
>
> Second, contamination that is temporary, … or that imposes remediation costs without preventing use of the building, … is unlikely to qualify as a direct physical loss to the insured premises. This does not mean that the contamination is not expensive to remove or serious in health risks. Rather, courts have recognized that first-party coverage responds to physical damage to the insured proper[t]y and not to all forms of loss or expense experienced by the property owner.

*Id.* at *6.

It is noteworthy that even Judge Sessions recognized some courts have found that "lack of visible harm to property is not necessarily determinative" and that "the presence of contaminants on a property, rendering that property unusable, may constitute a direct physical loss." *Associates in Periodontics*, 2021 WL 1976404, *6; *accord Studio 417, Inc. v. Cincinnati Insurance Company*, 478 F.Supp.3d 794, 801 (W.D. Mo. 2020) ("Other courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose."). Thus, while a contaminant which causes a persistent or complete loss of use of property may trigger coverage, the reduction of business activity, otherwise unaccompanied by such persistent and complete loss of use, necessarily falls short of "direct physical loss or damage" to property as that term is reasonably and ordinarily understood. *See Cinemark Holdings, Inc. v.*

11

*Factory Mutual Insurance Company*, 500 F.Supp.3d 565 (E.D. Tex. 2021) (Company forced to close all movie theaters because of COVID-caused changes in air and surfaces states claim for business loss under all-risk policy.); *Northwell Health, Inc. v. Lexington Insurance Company*, 2021 WL 3139991, * 8, ___ F.Supp.3d ___ (S.D.N.Y. 2021) (No coverage where hospital remains open and is only required to cancel elective procedures.). As applied to this case, these principles require the Court ultimately to grant Defendants' motion for judgment on the pleadings.

In light of the ruling in *McMahan*, this Court predicts that the Vermont Supreme Court would (1) construe Vermont insurance law as incorporating the uninhabitability/physical contamination theory outlined in *Brown's Gym* and *Kim-Chee,* and (2) recognize covered property damage or loss resulting from the pervasive, long-term presence of a virus such as COVID-19, where the virus causes a premises to be uninhabitable, unusable, inaccessible, or unduly dangerous to use.

In this case, the Plaintiffs have alleged that the COVID-19 virus has been and is present in its facilities. However, at all times, the Plaintiffs have remained in operation, albeit at reduced capacity. This fact indicates that Plaintiffs did not suffer a loss of its property, as that term is commonly understood, but instead suffered a non-covered loss of income. *See* Definition of "Lose." Macmillandictionary.com (accessed July 29, 2021) (to have something taken or destroyed); *see also 44 Hummelstown Associates,* 2021 WL 2312778 at * 7.

Following the reasoning of decisions like *McMahan*, *Brown's Gym,* and *Kim-Chee*, the Court finds no coverage as a matter of law in this case in the absence of a well-pled factual allegation that the insured suffered a complete loss of use as a result of the presence of the coronavirus contaminant. *Cf., e.g., Karmel Davis and Associates, Attorneys-At-Law, LLC v. The Hartford Financial Services Group, Inc.*, 2021 WL 420372, * 5, ___ F.Supp.3d ___ (N.D. Ga. 2021) (no recovery under loss of use theory where shelter order only limited how plaintiff could use its office); *Promotional Headwear International v. Cincinnati Insurance Company*, 504 F.Supp.3d 1191, 1202 (D. Kansas 2020) ("Assuming 'loss' can be defined as an interference or reduction in use, caselaw has made clear that when modified by the terms 'direct' and 'physical,' coverage is triggered when there is either 'permanent dispossession' of the property, or where the property itself becomes unusable or uninhabitable due to a material intrusion."); *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, 487 F.Supp.3d 834, 839 (N.D. Cal. 2020) (While policy covering "direct physical loss of or damage to property" does not require a physical change in property's condition, there is no coverage where there is no "permanent dispossession" of insured's storefront.). To trigger coverage for "direct physical loss or damage to property" to its property, the Plaintiffs must make a good faith claim that "the contaminant, pathogen, or other offending microorganism …render[ed] the insured structure uninhabitable or unusable, or nearly destroy[ed]

12

its functionality…." *Brown's Gym*, 2021 WL 3036545, * 15. This the Plaintiffs cannot do.

## B. Plaintiffs' Cross Motions

None of Plaintiffs' three cross-motions for partial judgment on the pleadings alters the Court's ultimate conclusion that the Property Policy does not provide coverage in this case.

In Cross-Motion No. 1, the Plaintiffs argue that "[w]hen the Reinsurers sold these policies to HIIRM, the insurance industry and the defendant reinsurers had long recognized that damage to property caused by viruses, unless expressly excluded, is covered by all-risk property insurance policies." Cross-Motion No. 1 at 3. Likewise, in Cross-Motion No. 2, HII argues that "as a matter of law, the Seepage-Pollution-Contamination exclusion asserted by the Reinsurer in these affirmative defenses does not unambiguously exclude coverage for loss or damage caused by SARS-CoV-1." Cross-Motion No. 2 at 1. Similarly, in Cross-Motion No. 3, HII maintains that "as a matter of law, the Microorganism Exclusion upon which Lex-London bases its Nineteenth Affirmative Defense does not bar coverage for loss or damage caused by SARS-CoV-2." Cross-Motion No. 3 at 1. The short answer is that analysis of the applicability of these exclusions is unnecessary because, as explained *supra*, there is no threshold coverage as defined by the Property Policy. *See Out West Restaurant Group Inc. v. Affiliated FM Insurance Company*, 2021 WL 1056627, * 6 (N.D. Cal. 2021) (appeal filed) ("Because the Court finds that Plaintiffs cannot allege direct physical loss or damage, it need not address the scope of the Policy's virus exemption.").

## III. Conclusion

The Defendants' Motion for Judgment on the Pleadings is *granted*. The Plaintiffs' Cross-Motions for Partial Judgment on the Pleadings, Nos. 1, 2, and 3, and the accompanying motions for judicial notice, are *denied as moot*.

So ordered.

Dated at St. Albans, Vermont, this 30th day of July 2021.


_
Robert A. Mello
Superior Judge


13